## Kimmell et al. *versus* Geeting.

1. Officers of a corporation cannot purchase any claim against, or interest in the company, except in trust for the stockholders, after a resolution has been adopted by themselves, as managers, directing one of their number to purchase for the benefit of the company.

2. A change of time and place of sale, from that published, where a resolution was passed, directing a manager to purchase stock for the benefit of the corporators, is no revocation of the authority.

3. In an action on the case for conspiracy, proof of a division of the profits of the fraudulent transaction, is sufficient evidence of combination in the first instance, to render admissible the declarations of one conspirator against the rest.

ERROR to the Court of Common Pleas of *Somerset county.*

On the 26th of June, 1850, the defendant in error, who was the plaintiff below, brought an action on the case for a conspiracy against the plaintiffs in error, Benjamin Kimmell, Tobias Musser, Samuel Stuckey, John Alsop, William Will, and John Metzgar, who were the President and Managers of the Somerset and Bedford Turnpike Road Company. John Metzgar was not served with process, and there was no appearance entered for him. The action was similar in nature to the case reported in 6 Harris, 156, *Kimmell* v. *Stoner*, and arose out of the same transaction, viz., the purchase of the State stock in the Somerset and Bedford Turnpike Road Company, and its division among the defendants to the exclusion of other stockholders, among whom was the plaintiff below.

The Commonwealth of Pennsylvania owned six hundred and seventy-two shares of stock in the Somerset and Bedford turnpike road, which, pursuant to an Act of Assembly, were advertised to be sold at Harrisburg, in the latter part of 1842. On the 4th of November, of that year, these defendants, who were managers of

the said turnpike company, passed a resolution authorizing John Metzgar to go to Harrisburg, immediately, to buy the State stock. This stock was not sold at Harrisburg at the time appointed, but was subsequently sold in Pittsburg, some time in the summer of 1843, to John Metzgar, and transferred to him on the books of the company, by Tobias Musser, the treasurer of the company, on the 23d of September, 1843. On the same day, Metzgar transferred to Benjamin Kimmell, fifty-two shares; to Tobias Musser, one hundred and four shares; to William Will, fifty-two shares; to Abraham Rhoads, fifty-two shares; to John Alsop, fifty-two share and to John Croner, fifty-two shares; making in all three hundred and sixty-four shares. Two hundred and fifty shares of this State stock, were transferred to Simon Gebhart, 13th December, 1843, pursuant to an arrangement made by Metzgar, with Ross Forward, Esq., at the time of sale. In this action, plaintiff only claims to recover his *pro rata* of the stock, held by Kimmell, Musser, Will, Rhoads, Alsop, Croner, and Metzgar— in all four hundred and twenty-two shares. To sustain his allegation of a conspiracy against defendants, plaintiff relies on the declarations of John Metzgar, as proven by Ross Forward, Clement Engle, David Levan, and Jacob Hoon, the transfer of stock by Metzgar, to these defendants on the books of the company, the declarations of Musser, as proven by William Barrack, and the resolution of the Board of Managers above referred to. The declarations of Metzgar were objected to by defendants, but admitted by the court below. They amount to this: He told Forward and Engle at the sale, he was there to buy the stock for the company, and that it would be sunk; told Lavan, after the sale, he had bought the stock for the company to sink; told Jacob Hoon, before the sale, that he had to go out to Pittsburg to buy the stock; that there was a company about Somerset, and mentioned Mr. Forward's name, that were going to buy it, and he would rather buy it for the use of the company and sink it, or distribute it among the stockholders. These declarations made by Metzgar were admitted by the court below, after the plaintiff had offered in evidence the foregoing resolution of the board, and the above-named transfer.

William Barrack heard Musser admit, that he had given Metzger money about the time of the sale, but did not say that he had given it for the purpose of buying the stock.

It was admitted, at the trial, that there were eight hundred shares of stock belonging to individuals, prior to the purchase by Metzger, to which two hundred and fifty shares of the State stock purchased by individuals are to be added, making ten hundred and fifty shares, exclusive of the four hundred and twenty-two purchased by Metzgar; and it was proven that plaintiff owned five shares.

[Kimmell et al. *v.* Geeting.]

The defendants pleaded the general issue, and the Statute of Limitations.

The court below, TAYLOR, P. J., charged the jury, that the right of the plaintiff to recover, depended on two questions: 1st. Whether the stock was purchased by John Metzgar for the company. 2d. Whether the defendants, or any two or more of them, fraudulently combined and conspired, to appropriate it to themselves, and did so appropriate it; that if these two points were decided affirmatively, the plaintiff, who was the owner of five shares of stock, would be entitled to recover against those so found to have combined together, and that the measure of damages would be a sum bearing the same ratio to the total amount lost by all the stockholders, that the five shares held by the plaintiff bore to the ten hundred and fifty shares owned by individuals. Whether the Statute of Limitations constituted a bar to the plaintiff's recovery, would depend on the lapse of time between the plaintiff's *actual knowledge* of the transaction, and the commencement of the suit. If he did not know of its existence six years before the institution of the action, the statute would not prevent his recovery.

A verdict was rendered for the plaintiff for $37.74.

The errors assigned were: 1. That the court erred in admitting evidence of the declarations of John Metzgar; because he was not a party to the action, and, because there was no evidence of a fraudulent combination between him and the defendants.

2. That, the court erred in charging, that the time when the Statute of Limitations commenced running, was the date when the plaintiff first *knew* of the transfer of the stock to the defendants individually.

*Edie*, for plaintiff in error, cited *Farnham* v. *Brooks*, 9 Pick. 246.

*Forward*, for defendant in error, cited *Rogers* v. *Hall*, 4 Watts, 359; *Gibbs* v. *Neely*, 7 Id. 559.

The opinion of the court was delivered October 28, 1853, by
LEWIS, J.—All the defendants, except John Alsop, were officers of the company in 1842, when the resolution was passed, directing John Metzgar, one of the managers, to go to Harrisburg, to purchase the stock of the company, then advertised to be sold at that place; and all of them were officers at the time Metzgar made the purchase at Pittsburgh, in 1843, (the time and place of sale having been changed.) Without any rescission of the resolution, directing the purchase to be made for the benefit of the company, these individuals (being the president, managers, and treasurer of the company,) thought proper to divide among

[Kimmell et al. *v.* Geeting.]

themselves the stock thus purchased by Metzgar, to the entire exclusion of the stockholders, whose agents they were.   It is not necessary to decide, that the officers of a corporation cannot purchase any claim against, or interest in the company, except in trust for the stockholders.   That subject will be fully considered in another case now before us.   But it is clear that they have no such right, after a resolution has been adopted by themselves, as managers, directing one of their number to purchase for the benefit of the company.

A change in the time and place of sale from that published when the resolution was passed, was no revocation of the authority to purchase for the benefit of the corporators ; and the division among themselves, by the defendants, of the stock purchased by the agent of the company, was an act of bad faith, which was certainly some evidence of a combination to defraud those whose interests they had undertaken to protect and promote.   If a traveller is robbed by a highwayman, and the latter is discovered soon afterwards, dividing the spoil among his companions, this is some evidence that they participated in the means by which it was obtained.   If the distribution is made, not according to the arbitrary will of the criminal, but equally, or according to some rule *of distribution agreed upon*, this strengthens the evidence of original participation in the act of acquisition. It is not intended to liken the conduct of the plaintiffs in error to persons of the description here referred to, farther than necessary to illustrate the principle.   As men are not generally permitted to reap where they do not sow, their participation in the fruits of the enterprise, under the circumstances, was some evidence that they were engaged in it, and the declarations of one of them, while so engaged, were properly admitted.

Thus far we are unanimous ; but the judges present at the argument are equally divided in relation to the question raised on the Statute of Limitations.   Two are of opinion, that the transfers of the stock on the books, and the use which the defendants made of it in voting at the elections, afforded the plaintiff below the means of discovering the fraud, and that therefore the action was barred, because not brought within six years. The other two judges think that the statute did not begin to run against the plaintiff below, until he actually discovered the fraud. We all incline to the opinion, that there is not sufficient merit in the case of the plaintiffs in error to entitle them to a re-argument before a full bench.   The judgment is therefore affirmed.