# Caldwell and Riddle *versus* Boyd.

1. The plaintiff conveyed land to the defendant, part of the consideration was stock. The suit was to set aside the deed on the ground that the defendant had been a promoter of the company and had participated in its fraudulent organization. There was no proof of representations of any kind at the sale. The court should have instructed the jury, as requested, that if the stock had a market value then nearly equal to its exchange value the plaintiff could not recover.

[Caldwell *v.* Boyd.]

2. Fraud must be proved either by positive evidence or inference from circumstances.

3. If there was fraud in the agents who bought land for the company, the *company* must seek the redress; there is no privity between the agents and the stockholders to authorize them to sue individually.

4. The company can be compelled to proceed for whatever has been wrongfully taken from it.

February 25th 1868. Before Thompson, C. J., Strong, Agnew and Sharswood, JJ. Read, J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 140, to July Term 1867.

Hugh Boyd commenced an action of ejectment, to March Term 1866, against Joseph Caldwell and Thomas Riddle, for a house and lot in Lingo street, Philadelphia. Caldwell was tenant of the premises under Riddle, the landlord, who defended.

The premises had been conveyed by Boyd to Riddle on the 23d of March 1865. The consideration named in the deed was $900, of which $200 were paid in cash, and the remainder in 250 shares of the stock of the Hubert Oil Company, and 250 shares of the Olive Branch Oil Company, valued together at $700.

The action was brought to set aside the deed on the ground of fraud in the purchaser. The alleged fraud related only to the Hubert Oil Company. The allegation was that the Hubert Oil Company had been fraudulently organized by Riddle and others. There was evidence that the subscription list represented $50,000 as paid, when in fact there was but $22,000 paid; that the land was put into the company at a very much larger price than it had been bought by its promoters; that receipts were given to Riddle and others for money not paid, and other matters supposed to tend to establish fraud in the organization of the company. There was evidence that about the date of the deed the stock of the Hubert Oil Company was selling at from $1.50 to $2 per share, and that it was considered good stock at that time.

The defendants offered no evidence. They asked the court to charge—

1. That to entitle the plaintiff to recover, actual fraud must be shown by defendant on plaintiff.

2. That if the stock, exchanged with money for the land, had a market value at the time equal or nearly so to its exchanged value, there was no injury to the plaintiff, and he cannot recover.

3. Fraud in organizing the company can be complained of only by subscribers to the company, and if the market or selling value was equal to the exchange price, there is no fraud which affects defendant's title.

4. That there must be such a fraud to vitiate defendant's title as amounts to an entire failure of consideration.

5. If the Hubert stock had a selling value of $2 per share at

[Caldwell v. Boyd.]

the date of conveyance, 22d March 1865, and that was the price at which it was sold to plaintiff, and he could have sold the same at that price, the consideration was valid, and plaintiff cannot recover.

6. Fraud to vitiate a conveyance must amount to entire failure of consideration.

7. If the plaintiff could at any time after the conveyance have sold the stock for the price fixed by Riddle, plaintiff cannot recover.

8. Fraud on subscribers to the company does not extend to parties not subscribers, who purchased the stock of the company or received it in exchange.

The court affirmed the 1st point, but declined to affirm the remainder, and reserved them.

The jury found "for the plaintiff on condition that the verdict be set aside, if within sixty days the plaintiff does not deposit with the prothonotary the sum of $400, with interest from March 23d 1865 to this day, and the certificate of the 250 shares of the stock of the Hubert Oil Company, with a sufficient power of attorney to transfer the same, to be delivered to the defendants."

Judgment was afterwards entered for the plaintiff on the reserved points.

The defendants took a writ of error, and assigned for error: The refusal of the court to affirm their points; entering judgment on the reserved points, and that the verdict was erroneous and void in law.

*P. Archer* (with whom was *L. C. Cassidy*), for plaintiff in error.—The action could not be maintained without evidence of suppression of the truth or false representations: Cazeau v. Mali, 25 Barb. 578; Pasley v. Freeman, 3 T. R. 51; Eagan v. Call, 10 Casey 236; Smith v. Smith, 9 Harris 372; Huber v. Wilson, 11 Id. 178; Harris v. Tyson, 12 Id. 347; Brightly's Eq. 71; Bokee v. Walker, 2 Harris 141; Fleming v. Slocum, 18 Johns. 403. Fraud in organization can be complained of only by the company: Smith v. Hurd, 12 Metc. 371; Allen v. Curtis, 26 Conn. 456; 24 Me. 9. The plaintiff had the means of knowing the value of the stock: Kintzing v. McElrath, 5 Barr 469. Plaintiff could recover only on an entire failure of consideration: Morgan v. Richardson, 1 Campb. N. P. Rep. 40 n.; Fleming v. Simpson, Id.; Abbott v. Allen, 2 Johns. Ch. Rep. 519; Barkhausted v. Case, 5 Conn. Rep. 528; Johnson v. Johnson, 3 B. & Pull. 170; Marvin v. Bennett, 8 Paige 312.

*E. S. Miller*, for defendant in error, referred to Lindley on Part. 789; Cazeau v. Mali, 25 Barb. 578; Bruff v. Mali, 7 Am. Law Reg. N. S. 48; Cross v. Sackett, 2 Bosw. 618; N. Y. & N.

[*Caldwell v. Boyd.*]

H. Railroad Co. *v.* Schuyler, 34 N. Y. 30 ; Jarrett *v.* Kennedy, 6 C. B. 319 ; Pulsford *v.* Richards, 17 Beav. 87 ; Wontner *v.* Shairp, 4 Man. Gr. & Sc. 422 ; Colt *v.* Wollaston, 2 P. Wms. 154 ; Watson *v.* The Earl of Charlemont, 12 A. & E. (N. S.) 856 ; Whelton *v.* Hardisty, 8 Ell. & Bl. 232 ; Hichens *v.* Congreve, 4 Russ. 574 ; Walstab *v.* Spottiswoode, 15 M. & W. 501 ; Kimmell *v.* Stoner, 6 Harris 155 ; Kimmell *v.* Geeting, 2 Gr. Cas. 125 ; Kintzing *v.* McElrath, 5 Barr 469 ; Cornelius *v.* Molloy, 7 Id. 293 ; Addison on Cont. 131 ; Hoe *v.* Sanborn, 21 N. Y. 555 ; 1 Sm. L. C. 298 ; Frazier *v.* Thompson, 2 W. & S. 236 ; Filson *v.* Himes, 5 Barr 457.

The opinion of the court was delivered, April 2d 1868, by

THOMPSON, C. J.—No question was raised at the trial below in regard to the remedy by ejectment to rescind an executed sale and conveyance for cash and stock, made by the plaintiff below to the defendants, of the premises in question, on the ground of fraud in a part of the consideration paid therefor. The deed and possession have both passed to the vendee Riddle, one of the defendants. That being so, no point can be raised now on the subject. The form of the verdict was unobjectionable if the remedy was proper. But it appears to us that in the absence of all proof of representations of any kind at the sale, the court should have instructed the jury that if the stock had a market value at the time, equal or nearly so to its exchange value, the plaintiff was not entitled to recover. The seller was not shown to have represented that it was better than that, nor that it would range higher. He was not bound to assume that the plaintiff bought it to hold ; if, therefore, it had a market value, and the plaintiff required no guarantee, asked no questions about it, the presumption is one not to be gotten over or disregarded, that he bought on his own judgment and must abide by it.

But the learned judge held that the defendant, Riddle, was guilty of a fraud on the company in aiding in putting off the land on it for $37,000 or $38,000, which cost in fact but about $15,000, and therefore is chargeable with the sale of fraudulent stock to the plaintiff. How does it appear that he did not tell the plaintiff all about the premium he received when he sold the stock, and that he did not say that the company had taken at $38,000, what cost but $15,000 ? It was for the plaintiff to make out fraud if there was fraud in the transaction.

But was the jury to assume that the fraud in the price of the land was the reason the stock became worthless ? It was an oil company, not a company for the sale of land, and unless the price paid showed that the land was not oil territory at all, a mere sham, which it did not, I see not how the price paid by the company could affect the stock issued. If the territory was a myth or

[Caldwell *v.* Boyd.]

bogus, it should have been shown in order to have had any effect on the transaction between the plaintiff and defendant. But this does not seem to have been pretended. Everything shows that it was believed to be good oil territory when bought. It was in the midst of the oil region, if I understand it. It nowhere appears that the stock went down because of the price the company paid for the territory. That was not possible, for the territory was paid for by it. I am utterly at a loss, therefore, to see how the defendant is to answer for a defect which he did not create. The loss was because the land turned out not to be oil territory, and not because the agents made a speculation—wrongfully it may be—out of the company. The stock was a mode of division of the profits to be made out of the oil; but there was no oil, and the stock would have been equally worthless as stock if the land had not cost $1000 instead of $37,000. In the distribution of the residuum of the company's assets, after paying debts, the profit wrongfully made by the agents out of the company may enter into the distribution; but that it attached itself to and affected the stock was not shown. Fraud must be proved either by positive evidence or inference from circumstances. Whatever fraud was in the matter of profits to the agents, is a matter which it is for the company to redress; there is no privity between the defendants and the stockholders to authorize the latter to sue them individually, and the cases of Kimmell *v.* Stoner, 6 Harris 155, and Kimmell *et al. v.* Gosling, 2 Grant 125, are no authority for this doctrine. It is manifest if stockholders might sue, either the first recovery would be a bar to all others, let the sum recovered be ever so inadequate to the money due the company, or, if not a bar, and all others might sue, amounts greatly in excess of what may have been received might be recovered. If then the stock was not worthless, by reason of the acts of the defendant communicating an inherent defect to it, as I think I have established was not shown by the testimony, where was the fraud in selling the stock to the plaintiff? No representations were made, as already said, of its present or prospective value, known to be fraudulent by the defendant; no active artifice to impose on the plaintiff: 7 Barr 293. The case stood clear of all this on the proof. We are therefore of opinion, as the case stood on the testimony in the court below, the court, in the absence of evidence of fraudulent representations as to the value of the stock, present or prospective, by the defendant, should have charged as requested in the defendant's 2d point, to wit: "That if the stock exchanged with money for the land (the house and lot) had a market value at the time equal or nearly so to its exchanged value, there is no injury to the plaintiff, and he cannot recover." And for the reasons already given, we think also that the defendant's 3d point should have been affirmed, viz.: "That fraud in

[*Caldwell v.* Boyd.]

organizing the company can be complained of only by subscribers to the company," &c., not by parties purchasers of stock in the market, the stock being bonâ fide the stock of the company.

As to the price paid by the company for the land, nobody was deceived about it, if they had chosen to inquire about it; it was undeniably $38,000. They should or might have known that. They are therefore to be presumed to have bought stock on that basis of capital.

Because the company may have paid more than they ought to have paid by misrepresentation or by the management of others, that did not affect the stock as' bonâ fide stock of the company. That would not authorize holders to sue the company and get back their money. The company committed no fraud, and because it may have been wronged in regard to the value of its property, yet if it defrauded nobody it could not be made liable, nor its stock treated as a nullity. The company has a right to proceed to recover whatever was wrongfully taken from it, and it can be compelled to do so; and whatever may be recovered will be assets to distribute to the stockholders in winding up the concerns of the company. But it is the company which must look to that. Upon the whole, we see no evidence whatever in the case of any fraud in the sale of the stock in question by the defendant, Riddle, to the plaintiff, or anything to show that the stock itself was fraudulent. Judgment should therefore have been entered on the reserved points in favor of the defendant, *non obstante veredicto.*

And now, April 2d 1868, judgment in this case is reversed, and judgment is entered for the defendants on the reserved questions in the court below, *non obstante veredicto,* with costs.

SHARSWOOD, J., dissented.