## THE ROYAL INS. CO. v. WILLIAM BEATTY.

ERROR TO THE COURT OF COMMON PLEAS NO. 2 OF PHILA-
DELPHIA COUNTY.

Argued January 16, 1888—Decided February 20, 1888.

1. Where, in an action upon a contract, the plaintiff's case consists of the proof of a proposal, with the presumption of assent thereto arising from the silence of the defendant, no legal inference of a contract can arise out of such silence, without evidence of a duty to speak on the part of the defendant, which was neglected to the plaintiff's harm.
2. In an action upon a policy of insurance, the term of which had expired when the loss occurred, the plaintiff proved an application to "bind" it (that is, to continue it in force temporarily), and, receiving no reply, supposed that the policy was continued: *Held*, that under the evidence, no legal liability on the part of the company was created.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 407 January Term 1887, Sup. Ct.; No. 667 March Term 1886, C. P. No. 2.

An action of covenant, afterward changed to assumpsit, was brought (when, not shown), by William Beatty against the Royal Insurance Company of Liverpool, to recover upon two policies of insurance, each for $3,000 and for the term of one year expiring at the same time on January 6, 1886.

At the trial on June 11, 1887, the evidence, more fully appearing in the opinion of this court, was to the effect that on the day before the term of the policies expired, the clerk of an insurance broker who had charge of them was sent to the defendant company's office to "bind" them, that is, to have it agreed upon that they should be deemed in force till it was ascertained whether there would be a change in the rates, and then the insured would determine whether to drop the policies or renew them. The clerk had a memorandum of other policies for other people with him, to which it was desired that the night clause—the privilege of running at night—be extended, and asked the renewal clerk of the insurance company

Arguments.

to "bind" the policies in suit and to have the night clause extended to the others. The insurance clerk discussed with the broker's clerk the subject of the night clause in the other policies, but said nothing and did nothing with reference to "binding" the policies in suit. The broker's clerk assumed or believed he had assented and so reported to his own office, where memoranda were made upon the broker's books indicating that the policies were renewed. The loss occurred on January 10th, following. The defendant company's renewal clerk testified that he did not hear the request to "bind" the policies in suit, and the policies had not been renewed.

At the close of the testimony, the defendant requested the court to charge the jury:

1. That there was no evidence of an acceptance by the defendant of the offer to renew the plaintiff's policies, and the verdict of the jury must be for the defendant.[1]

The court, HARE, P. J., refused to affirm this point, and submitted the cause upon the evidence, the charge not appearing upon the paper books.

The verdict of the jury was for the plaintiff, amount not shown, and, judgment being entered thereon, the defendant took this writ, assigning as error, inter alia, the refusal to affirm the point submitted by the defendant.[1]

*Mr. R. C. McMurtrie,* for the plaintiff in error:

1. If the facts, as stated by the witnesses, entitled a jury to infer that an assent was given, or that the plaintiff's agent was entitled to assume an assent, the judgment must be affirmed. It may even be conceded that if the defendant heard the request and said nothing, he may be within the rule relied on by the court. But what is the rule? It applies only where there is a duty to speak, and silence misleads. It is impossible to assert that if I do not hear and understand, I am compelled to speak on the pain of being concluded. Hearing and understanding are presupposed in the maxim.

2. The plaintiff did not pretend to assert that the defendant heard him. He implies, of course, that he supposed he had; but when the denial came it was necessary to do something more than rely on the presumption that a remark had been heard. It was quite clear on the defendant's side that his

Arguments.

agent had done nothing and said nothing to make a contract. He had told his master there was none made; that he had not been asked to make it, and his master had acted on this.

3. Was there any evidence that warranted the inference that this was mistaken or false ? No one asserted that he had heard, or that the speaking was such that he must have heard. And after the denial and proof corroborative that defendant had acted on the footing that there was no contract, there was no attempt to give any fact that could justify the assumption of the unproved and denied fact that a request to renew or bind was heard and known to have been made.

4. Then, the case being that the plaintiff must affirmatively establish the making of the contract, and there being nothing more than a statement of a request not followed by any act or by any assertion that the request was so made as to be certainly heard, in judging between the two the court seemed to sup- pose it was a mere question of which was to be believed, not seeing that if both spoke the truth, which was at least possible, the plaintiff had certainly failed to prove his case.

*Mr. George H. Earle, Jr.* (with him *Mr. Richard P. White*), for the defendant in error :

1. It was established beyond controversy that it was the settled custom of the defendant company in cases where a policy was about to expire, to continue it upon notification that the insured wanted it " bound." The broker's clerk testified positively that he had the policy so continued; the insurance clerk admitted all the facts stated by the witness, except that the particular policies in suit were named. The sole question, therefore, was the simple one, whether it was the broker's clerk, or the insurance clerk, who gave the correct testimony as to what took place.

2. As it is conceded that, if the policies in suit were mentioned so as to be heard, according to the custom a verbal assent was not necessary, it seems unnecessary to quote authorities to show that the circumstances as testified to warranted the jury in finding a contract. In Clisman v. Count, 2 M. & Gr. 307, several items were submitted, and, as in the present case, a part only were mentioned and objected to; held, that there was evidence of a binding contract as to the

balance. Admission by silence also, as well as admission by speech, may have a contractual force, and may bind as effectually as may words. When such silent admissions so operate as to put the actor in a specific attitude to other persons, by which such other persons are induced to do, or omit to do, a particular thing, then he is estopped from subsequently denying that he occupied such position, and is compelled to make good any losses which such other parties may have sustained by his course in this relation : Whar. Con., § 6.

Opinion, Mr. Justice Green:

We find ourselves unable to discover any evidence of a contractual relation between the parties to this litigation. The contract alleged to exist was not founded upon any writing, nor upon any words, nor upon any act done by the defendant. It was founded alone upon silence. While it must be conceded that circumstances may exist which will impose a contractual obligation by mere silence, yet it must be admitted that such circumstances are exceptional in their character and of extremely rare occurrence. We have not been furnished with a perfect instance of the kind by the counsel on either side of the present case. Those cited for defendant in error had some other element in them than mere silence, which contributed to the establishment of the relation.

But in any point of view it is difficult to understand how a legal liability can arise out of the mere silence of the party sought to be affected, unless he was subject to a duty of speech, which was neglected to the harm of the other party. If there was no duty of speech there could be no harmful omission arising from mere silence. Take the present case as an illustration. The alleged contract was a contract of fire insurance. The plaintiff held two policies against the defendant, but they had expired before the loss occurred and had not been formally renewed. At the time of the fire, the plaintiff held no policy against the defendant. But he claims that the defendant agreed to continue the operation of the expired policies by what he calls "binding" them. How does he prove this? He calls a clerk, who took the two policies in question, along with other policies of another person, to the agent of the defendant to have them renewed, and this is the

Opinion of the Court.

account he gives of what took place: " The Royal Company had some policies to be renewed and I went in and bound them. Q. State what was said and done ? A. I went into the office of the Royal Company and asked them to bind the two policies of Mr. Beatty expiring to-morrow. The court: Who were the policies for? A. For Mr. Beatty. The court: That is your name, is it not? A. Yes, sir. These were the policies in question. I renewed the policies of Mr. Priestly up to the 1st of April. There was nothing more said about the Beatty policies at that time. The court: What did they say? A. They did not say anything, but I suppose that they went to their books to do it. They commenced to talk about the night privilege, and that was the only subject discussed." In his further examination he was asked: " Q. Did you say anything about those policies (Robert Beatty's) at that time ? A. No, sir; I only spoke of the two policies for William Beatty. Q. What did you say about them ? A. I went in and said, ' Mr. Skinner, will you renew the Beatty policies and the night privilege for Mr. Priestly,' and that ended it. Q. Were the other companies bound in the same way? A. Yes, sir ; and I asked the Royal Company to bind Mr. Beatty."

The foregoing is the whole of the testimony for the plaintiff as to what was actually said at the time when it is alleged the policies were bound. It will be perceived that all that the witness says, is, that he asked the defendant's agent to bind the two policies, as he states at first, or to renew them, as he says last. He received no answer, nothing was said, nor was anything done. How is it possible to make a contract out of this ? It is not as if one declares or states a fact in the presence of another and the other is silent. If the declaration imposed a duty of speech on peril of an inference from silence, the fact of silence might justify the inference of an admission of the truth of the declared fact. It would then be only a question of hearing, which would be chiefly if not entirely for the jury. But here the utterance was a question and not an assertion, and there was no answer to the question. Instead of silence being evidence of an agreement to do the thing requested, it is evidence, either that the question was not heard, or that it was not intended to comply with the request. Especially is this the case when, if a compliance was intended, the request

would have been followed by an actual doing of the thing requested. But this was not done ; how then can it be said it was agreed to be done ? There is literally nothing upon which to base the inference of an agreement, upon such a state of facts. Hence the matter is for the court and not for the jury ; for if there may not be an inference of the controverted fact the jury must not be permitted to make it.

What has thus far been said relates only to the effect of the non-action of the defendant, either in responding or in doing the thing requested. There remains for consideration the effect of the plaintiff's non-action. When he asked the question whether defendant would bind or renew the policies and obtained no answer, what was his duty ? Undoubtedly to repeat his question until he obtained an answer. For his request was that the defendant should make a contract with him, and the defendant says nothing. Certainly such silence is not an assent in any sense. There should be something done, or else something said before it is possible to assume that a contract was established. There being nothing done and nothing said, there is no footing upon which an inference of an agreement can stand. But what was the position of the plaintiff ? He had asked the defendant to make a contract with him and the defendant had not agreed to do so ; he had not even answered the question whether he would do so. The plaintiff knew he had obtained no answer, but he does not repeat the question ; he, too, is silent thereafter, and he does not get the thing done which he asks to be done. Assuredly it was his duty to speak again, and to take further action if he really intended to obtain the defendant's assent. For what he wanted was something affirmative and positive, and without it he has no status. But he desists, and does, and says nothing further. And so it is that the whole of the plaintiff's case is an unanswered request to the defendant to make a contract with the plaintiff, and no further attempt by the plaintiff to obtain an answer, and no actual contract made. Out of such facts it is not possible to make a legal inference of a contract.

The other facts proved and offered to be proved, but rejected improperly, as we think, and supposed by each to be consistent with his theory, tend much more strongly in favor of the de-

fendant's theory than of the plaintiff's. It is not necessary to discuss them, since the other views we have expressed are fatal to the plaintiff's claim. Nor do I concede that if defendant heard plaintiff's request and made no answer, an inference of assent should be made. For the hearing of a request, and not answering it is as consistent, indeed more consistent, with a dissent than an assent. If one is asked for alms on the street, and hears the request, but makes no answer, it certainly cannot be inferred that he intends to give them. In the present case there is no evidence that defendant heard the plaintiff's request, and without hearing there was, of course, no duty of speech.

Judgment reversed.