## S. M. WINCHELL v. THE IOWA STATE INSURANCE COMPANY, Appellant.

**Insurance: ESTOPPEL.** An insurer is not estopped to deny its approval of an application, by its retention of a non-negotiable premium note accompanying the same, and the failure of the soliciting agent to return the application or notify the insured of its rejection, although the insured, in the belief that the application had been accepted, failed to take out other insurance, in the absence of any notice to the insurer that he entertained such belief. Citing *More v. Insurance Co.*, 130 N. Y. 537; *Insurance Co. v. Johnson*, 23 Pa. St. 72; *Insurance Co. v. Beatty*, 119 Pa. 6; *Haskin v. Insurance Co.*, 78 Va. 700; *Insurance Co. v. Helzgrafe*, 53 Ill. 516; *Harp v. Insurance Co.*, 49 Md. 307; *Heiman v. Insurance Co.*, 17 Minn. 153.

**SAME:** *Agents.* The failure of a soliciting agent of an insurer to pay the applicant for livery hire which he accepted as the cash payment, does not estop the insurer to assert that it did not approve of the application, in the absence of any evidence that the agent had any actual or apparent right to contract for livery service at the expense of the insurer.

**AGENTS.** A mere soliciting agent of an insurance company, without power to make contracts, has no power to construe an application for insurance and a premium note, nor to declare their legal effect.

**Contract of Insurance: APPLICATION.** Receiving an application for insurance accompanied by a premium note, does not of itself constitute a contract for insurance.

*Appeal from Poweshiek District Court.*—HON. BEN
McCOY, Judge.

WEDNESDAY, OCTOBER 13, 1897.

ACTION at law to recover the amount of an alleged
contract of insurance. There was a trial by jury, and a
verdict and judgment for the plaintiff. The defendant
appeals.—*Reversed.*

*McVey & Cheshire* for appellant.

No appearance for appellee.

ROBINSON, J. — On the twenty-fifth day of May,
1894, the plaintiff, who was the keeper of a livery stable,
signed and delivered to D. F. White, a soliciting agent
of the defendant, a mutual fire insurance company, an
application to it for insurance against loss or damage
by fire, for the term of six years from that date. The
insurance asked was for two hundred and fifty dollars
on work horses and mules, and one hundred and fifty
dollars on buggies, carriages, and harness. Attached
to the application was a promissory note for the sum of
forty-eight dollars, payable on assessment; but not
exceeding fifteen per centum thereof was collectible in
any one year. The application was made subject to the
conditions of the policy to be issued and the by-laws
and charter of the defendant, and provided that the
policy should be sent to the applicant. The application
described two barns as the premises in which the prop-
erty to be insured was kept. On the first day of June,
1894, the application, having been received by the
defendant, was rejected "for specific amount on each
barn, and also for rate of four per cent. on the contents
of barn No. 1 and two per cent. on barn No. 2," and was

returned, with the note, to the agent, White. He testifies that he received the two papers on the fourth day of June, and that on the next day he saw the plaintiff, informed him that his application had been rejected, stating the reason for that action, and proposed to increase the note, and meet the requirements of the company; and that the plaintiff said he was about to sell the property to be insured, and would have the purchaser insure it. White further testifies that he then delivered the note to the plaintiff, who destroyed it, but retained the application, on account of the description of property, which it contained, for use in preparing another application. On the twenty-second day of August, 1894, property covered by the application, of an aggregate value exceeding four hundred dollars, was destroyed by fire. The plaintiff admits that he was with White several hours on the fifth day of June, and that he saw White again in August, before the fire; but states that he did not inquire for the policy, that the matter of insurance was not referred to on either occasion, and that his note was not returned to him. He also admits that he told White that two young men were to buy the property. Proof of loss was mailed to the defendant on the twentieth day of October, 1894. The claim made in the original petition of the plaintiff was that a contract of insurance was effected by the signing and delivery of the application and note. In an amendment to the petition the plaintiff states that the application was made at the solicitation of White, and signed without reading, because the plaintiff was unable to read it without great labor; that White represented that the making of the application and note constituted and was the defendant's contract of insurance from that date; that the plaintiff, not knowing the rules, provisions of policies, or by-laws of the defendants, believed White's statements to be true, and from that time relied thereon

as the contract of insurance of the defendant, and because thereof did not procure other insurance; that the defendant, through its agent, knew that the plaintiff believed and relied upon the statement of the agent, and for that reason did not procure other insurance; that the defendant retained the application and note, and did not notify the plaintiff that his application had been rejected until after the destruction of the property, and is now estopped to deny its liability as the insurer of the property. The answer of the defendant denies liability, and pleads various matters, which we need not refer to in detail. At the close of the evidence the defendant moved the court to direct a verdict in its favor, but the motion was overruled. The district court instructed the jury in regard to the elements of an estoppel, and directed it to return a verdict for the defendant if the evidence failed to show that it was estopped from asserting that it did not approve the application. Therefore the controlling question for us to determine is, did the evidence authorize the jury to find that the defendant was estopped to assert that it did not approve the application?

White was a soliciting agent, without power to make contracts for the defendant, and the plaintiff had no sufficient reason for believing that he had such power. The plaintiff had seen White a few times when the application was made, but was not acquainted with him. It does not appear that White made any representations in regard to the contents of the application, nor that the plaintiff asked to have it read, or expressed any desire to know its contents. The plaintiff states that White told him the contract of insurance would take effect at noon of the day the application was signed, but it was not the duty, nor within the power, of White to construe the application and note, nor to declare their

legal effect. *Dryer v. Insurance Co.*, 94 Iowa, 471. The plaintiff states that he understod that White was to write a policy for him when the application was taken, and did not understand that he was to submit the application to the defendant for its approval; but in that he contradicts other testimony which he gave, to the effect that he supposed the application would be sent to the defendant, to be approved by it before the policy would be issued, and that White did not say anything to him about the policy. A by-law of the defendant provides that "any person wishing to become a member of the company shall, previous to being insured, deposit his application and premium note with the secretary or agent, upon which note he shall pay five per cent., and, if said application be approved by the directors, the policy of insurance shall bear date of that day, and take effect at noon, unless otherwise directed by the applicant." When the application of the plaintiff was taken, he did not pay any money, but White agreed to take the five per cent. cash payment required by the by-law referred to in livery service, and that was furnished him. White says he offered to pay the plaintiff the livery hire when the application was returned, but that the plaintiff declined to receive the money, stating that it could be applied on the insurance when taken. The plaintiff denies this, and states that the money has never been paid nor tendered to him, and for the purposes of this appeal we must assume that his statement is true. But, if true, it would not affect his rights, for the reason that, so far as appears, White did not have either the actual or apparent right to contract for livery services at the expense of the defendant. It is well settled that the receiving of an application for insurance, accompanied by a premium note, does not constitute a contract of insurance. The delivery of the note and application is in the nature

of a proposition for insurance which requires the assent of the insurer to constitute a contract. *Walker v. Insurance Co.*, 51 Iowa, 680; *Armstrong v. Insurance Co.*, 61 Iowa, 215. But, if an application and premium note be sent to the insurance company, and it rejects the application, but does not notify the applicant of the fact, does its silence estop it to deny an approval of the application? In *Atkinson v. Insurance Co.*, 71 Iowa, 340, it appeared that an application and premium were received by a soliciting agent of the insurance company, and mailed to, but never received by, it. This court held that there was no contract of insurance, although it said, "If the defendant had received the application and premium, and retained the same, and remained silent, it may be that it should be held to have approved the application." But the question thus suggested was not involved in the case, and was not determined. Ordinarily, mere silence in regard to a proposal to enter into a contract will not authorize the presumption that the proposal has been accepted. This case differs from such a case in that the proposal or application for insurance was accompanied by a premium note, which, if the plaintiff is to be believed, was retained by the defendant. But it was not negotiable, and could have been made of value only by accepting the application. As that was rejected, the note was valueless, and the defendant was not in any manner benefited, nor the plaintiff harmed, by the failure to return it before the fire. The plaintiff has failed to show that the defendant knew, or had any reason to know, that he relied upon the belief that his application had been accepted. The defendant had promptly returned the application and note, when rejected, to White, with the evident intention that he should inform the plaintiff of what had been done. It may be conceded that it was a

duty which White owed to the defendant to give that
information; but the defendant and the plaintiff were
alike interested in making the contract, and it was as
much the duty of the latter to inquire whether it had
been entered into as it was the duty of the former to
give that information. The plaintiff admits that he was
with White eleven days, and again more than two
months, after the application was delivered, and yet
claims that he did not make any inquiries with respect
to the policy. He does not claim to have been misled
by anything which was done or said by the defendant
or White, excepting the statements of the latter in
regard to the effect of the application and note, to
which we have already referred; but the plaintiff relies
upon the silence of the defendant as creating an estop-
pel. However, under the circumstances we have
related, there was no obligation to speak. The views
we have expressed find support in the following author-
ities: *More v. Insurance Co.*, 130 N. Y. 537 (29 N. E.
Rep. 757); *Insurance Co. v. Johnson*, 23 Pa. St. 72; *Insur-
ance Co. v. Beatty*, 119 Pa. St. 6 (12 Atl. Rep. 607); *Has-
kin v. Insurance Co.*, 78 Va. 700; *Insurance Co. v. Holz-
grafe*, 53 Ill. 516; *Harp v. Insurance Co.*, 49 Md. 307;
*Heiman v. Insurance Co.*, 17 Minn. 153; 1 Beach, Insur-
ance, section 499; 2 May, Insurance, section 508. We
conclude that the evidence was not sufficient to sustain
a verdict for the plaintiff, and that the district court
erred in not directing a verdict for the defendant. Its
judgment is therefore REVERSED.