## WIFE HELD ON HUSBAND'S ACCOUNT FOR GOODS.

Circuit Court of Lorain County.

HELENA KLAMUT v. THE CLEVELAND PROVISION COMPANY.[*]

Decided, May 1, 1907.

*Contract—Acceptance of Offer by Silence.*

Where a party who had been extending credit to a dealer tells him and
his wife in the presence of each other that in the future no goods
will be supplied to them except for cash or upon their joint ac-
count, and the wife remains silent, both then and later when goods
were delivered and bills sent to her and her husband charging
them jointly: *Held*, that under the circumstances her silence
amounted to an acceptance of the offer to sell upon the joint ac-
count of herself and husband.

*Ingersoll, Stetson & Wilcox,* for plaintiff in error.
*Thompson, Glitch & Cinniger,* contra.

WINCH, J.; HENRY, J., and MARVIN, J., concur.

The Cleveland Provision Company brought its action for the
balance due on a joint account for meat sold and delivered to
Peter Klamut and Helena Klamut, husband and wife, between
July 15 and July 29, 1904.

The husband pleaded his discharge in bankruptcy, and a ver-
dict in his favor was directed. The wife claimed that the hus-
band was solely liable on the account, but the jury found against
her.

The question of importance before us is, whether silence
amounts to assent, *i. e.*, whether a contract is proved by showing
a proposition made by the plaintiff to furnish goods upon cer-
tain terms of credit, silence on the part of the defendant, and
the subsequent furnishing of goods by the plaintiff. The an-
swer to this question depends upon the facts of the particular
case.

*Affirmed without opinion, *Rice, Trustee,* v. *Klamut et al,* 81 Ohio
State, 566.

It appears that Peter Klamut was running a meat market and pool room and saloon in connecting storerooms, and also that he and his wife lived in the same premises, the wife helping in the saloon, at times, but never in the meat market.

The provision company had been furnishing meat to Peter for which he paid cash, until February, 1904, after which date he had credit, until July 15, after which date meat was furnished as before, but charged to the joint account of Peter and his wife.

On the latter date, the agent of the provision company went to Peter and told him he wanted to see his wife. He found both behind the bar in the saloon. Peter said: "What do you want to see the Mrs. for?" Thereupon the agent made the following statement:

"I said we had heretofore extended a line of credit to Peter Klamut, and that I had received a letter that morning from our headquarters, stating that he had misrepresented to me the ownership of the property; that the commercial report showed the property belonged to his wife, and it was on his statement that he owned the property that I had opened an account with him in February, and I told him and Mrs. Klamut very distinctly that under the situation his account would have to be closed after the next day, which was Saturday, and that if any further goods was purchased from the Cleveland Provision Company that they would either have to pay cash as they had done previous to February second, 1904, or they would have to be charged jointly to Helena and Peter Klamut.

"Q. And where was Mrs. Klamut at that time? A. She was standing right along side of her husband.

"Q. And you say this took place when? A. Friday afternoon, July 15. I received the letter in the morning and I went to them right after dinner."

We think the jury was warranted in finding that the wife heard and understood all that the agent said. It was also shown that some time previous, the husband had transferred all his real property to his wife.

For the ensuing two weeks meat was sent the butcher's shop as before, a bill or statement accompanying each delivery.

Five of these bills were made out against Peter Klamut, two against Mrs. Peter Klamut and eight against Helena and Peter Klamut. The defendant-produced these bills at the trial and we think the jury was warranted in finding that the wife knew about them at the time.

Two weekly statements were also mailed in envelopes addressed to the husband, one dated July 19, and the other July 23, both made out against Helena and Peter Klamut.

We think the jury was warranted in finding that the wife knew all about these bills at the time they were received by her husband. Indeed, she had the bill of July 23 in her hands when the agent called on her, August first, for payment, and on that day she paid the agent three hundred dollars, which he credited on said bill and handed it back to her. The next day her husband filed his petition in bankruptcy. Some ten days later when the agent called upon her for payment of the balance of the bill, the wife said, "she wouldn't pay any more money into the meat business, and Peter could do as he was a mind to."

We are not unmindful that the wife denied what we have said the jury was warranted in finding, but they had a right to disbelieve her.

The case was put to the jury in two aspects: first, was the meat furnished the husband upon the wife's antecedent and original promise to pay if the husband did not, and second, was the meat furnished both, upon the joint undertaking of both to pay therefor. Special findings were requested by defendant involving both theories, and all the questions were answered by the jury, but we find no such inconsistencies in these answers as to invalidate the general verdict, nor do we find any error in the charge.

The sole question remaining is whether the silence of the wife when the agent made his proposition on July 15, and her conduct after that date, made her liable on this account?

We have examined the authorities upon this question and believe the best exposition of the law is to be found in a case cited by plaintiff in error, *Royal Ins. Co.* v. *Beatly,* 119 Pa. State, 6, the syllabus of which is as follows:

"Where in an action upon a contract the plaintiff's case consists of the proof of a proposal, with the presumption of assent thereto, arising from the silence of the defendant, no legal inference of a contract can arise out of such silence, without evidence of a duty to speak on the part of the defendant, which was neglected, to the plaintiff's harm."

Mr. Justice Green, delivering the opinion of the court, calls attention to the difference between asking a question and receiving no answer, and making a statement or assertion to which there is no reply.

Of the former class was the case cited.    To the latter class we think this case belongs.

When the agent of the provision company told Mrs. Klamut that he would deliver no more meat unless she and her husband paid cash or she and her husband became jointly liable for it, under the circumstances of this case it was her duty to speak, and tell him not to send any more meat, if she did not desire to be charged for it.    When the meat came with the invoice, she knew the provision company was looking for its payment from her. She then had the election to pay cash or have the goods charged to her and her husband jointly.    She said nothing, but suffered other deliveries under the same circumstances.    She knew the provision company was charging the meat to her and that deliveries would cease if she denied her liability.    Every moral and legal obligation was upon her to speak and save the provision company from loss.    The relation of husband and wife is so intimate in business matters as well as in other matters, and particularly so in this case, where the wife kept the meat bills behind the bar where she admits that she helped her husband, that we think her silence when the statement of their financial affairs as understood by the provision company, was made to her, coupled with a statement of what the company would do, should not absolve her from liability.

Her silence conceded the truth of said statements and also in connection with her knowledge of the statements and invoices sent with the deliveries, amounted to assent to the proposition that they should be charged to her account, jointly with her husband, as they were.

Judgment affirmed.