# METZLER v. HARRY KAUFMAN COMPANY.


SALES; STATUTE OF FRAUDS; OFFER AND ACCEPTANCE; CHARGE TO JURY.

1. A written order for goods on the manufacturer, signed only by his agent authorized to take and transmit orders for acceptance, is not such a memorandum of sale as satisfies the requirement of the statute of frauds that no contract for the sale of merchandise for the price of $50 or upwards shall be allowed to be good "unless some note or memorandum in writing of the said bargain shall be made and signed by the parties to be charged, or their agent thereunto lawfully authorized." (Construing sec. 1119, D. C. Code, 31 Stat. at L. 1368, chap. 854.)

2. A mere offer to purchase or sell, not accepted by the parties to whom it is made, does not constitute a contract.

3. In an action by the buyer for breach of contract by the seller to deliver goods, when the issue is whether defendant accepted an order by the plaintiff for the goods, and there is no evidence to show an express ac-

ceptance, it is error for the trial court to charge the jury that their verdict should be for the plaintiff if they should find that, after receiving the order, the defendant made up his mind to accept the order. Coming to a determination in one's mind to accept, without communicating that assent, is insufficient to show acceptance.

No. 1868.   Submitted December 1, 1908.   Decided February 2, 1909.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action for breach of a contract of sale.        *Reversed.*

The COURT in the opinion stated the facts as follows:

Harry Kaufman Company, a corporation organized and doing business as retail shoe merchants in the District of Columbia, sued Maurice W. Metzler, who was a manufacturer and jobber in shoes in the City of New York, trading under the name of Henry Maury Shoe Company, to recover damages for breach of a contract to deliver shoes ordered by plaintiff.

The declaration alleges that on November 23, 1906, defendant, by his duly authorized agent, Adolph Goetz, entered into an agreement with plaintiff at his place of business in the city of Washington, whereby the plaintiff agreed and promised to purchase and accept from defendant about 700 pairs of shoes; and defendant, his agent aforesaid, agreed and promised in writing, in consideration of the agreed price, to wit, $865.35, to deliver the said shoes to plaintiff in two shipments, February 15 and March 15, 1907, respectively. That plaintiff was ready and willing to receive and pay for said shoes, but defendant failed and refused to deliver them. That plaintiff was hindered from buying similar shoes elsewhere by reason of the lateness of the season, and was prevented from opening a new store which he had fitted up for use, as defendant well knew. That he lost all the profits he would have made by selling such shoes at retail, which would have been 40 per cent of the agreed price. That plaintiff was prevented from conducting any business in his said store for nearly a month, and thereby lost all

of the profits he would have made in said time. Five thousand dollars damages were claimed.

Plaintiff offered Adolph M. Goetz as a witness, who said that he had been employed by defendant as a shoe salesman on November 19, 1906, and had been instructed to call on plaintiff. Witness did so "and sold him." That on November 23 he took an order from plaintiff, for delivery in the spring of 1907. Plaintiff then offered the two orders for goods. These are copied in the record. They are printed blanks, with "Henry Maury Shoe Company" in large letters at the head, and address following. With blanks filled by typewriter, it reads: "Make for and send to—Henry Kaufman Co. When—after February 15—Sold by—A. M. Goetz." A list of 104 pairs of shoes follows, with description of the same.

The second order, or second sheet of the same order it might be called, shows the same entries, save that the date of delivery is March 1, and the number of pairs of shoes is 234. At the foot of this sheet the name "A. M. Goetz" is typewritten.

The defendant objected to the introduction of the said orders, on the ground of variance, but was overruled. The orders were then read, and Goetz further testified that plaintiff wanted fancy shoes, for a new addition to his store. That the orders were made up in duplicates. He left one with plaintiff, and forwarded the other to defendant. That in the fore part of December he was in defendant's office, and defendant told him the Kaufman order and another had been held over for witness. He asked witness why he got a much larger order this time than before, and he told defendant that Kaufman was making an addition to his store, and was using more shoes. He did not remember defendant's reply. Most of the shoes were fancy goods, novelties, showy goods for the colored trade; some staple good. Witness left defendant's employ February 9, 1907. On cross-examination he said that he was a drummer for defendant. Received no salary, but a commission on goods that were shipped. That the orders taken by him were subject to acceptance and approval by the defendant, and, unless such orders were accepted and paid for, witness received no commission.

Harry Kaufman, manager of the plaintiff company, testified that he knew Goetz, who invited him to examine his samples, and that he gave the order: He identified the orders as the duplicates left with him. Told Goetz he was opening a new shoe department and wanted the goods specially for the occasion. Styles were to be exclusive and of witness's "get up." Told him when the building would be completed, and how he wanted the goods shipped, and impressed him with the fact that they must be here on time. The goods were never received. He had been in shoe business about thirty-five years, and was familiar with market value of such shoes. That he was prevented from buying the goods elsewhere because of the lateness of the season, and from opening his new store. That he lost the profit on the sales. This profit he said would be 40 per cent of the cost price. This was objected to on the ground that the measure of damages was not the expected profit from sale at retail, but the difference between the cost price and the value of the shoes as a whole at time of expected delivery. He read a letter from defendant dated February 12, 1907. This informed him that Goetz was no longer in defendant's employ, and said: "Regarding this matter, we wish to say that an order which he took from you some months hence, and which we could not accept, was brought to the writer's attention." There was some excuse for delay in writing presented, which is unimportant. This was the first information plaintiff had that the order would not be filled. He went to other houses, but could not get the goods wanted.

For defendant, Joseph A. Besberich, a local shoe merchant, testified that he was familiar with the customs of the shoe trade. That "the custom is, and what is understood to be the custom of the trade in this city, when orders are given by a retail firm to a drummer or salesman, as to whether the order is subject to approval and acceptance by the firm, he knows that all such orders are subject to approval by the wholesale dealer or manufacturer." That the forms in this case are the usual ones. That but fifty-six pairs of the shoes were different from the ordinary samples; all others could be duplicated at factory within three

or four days.  Examining the articles as enumerated, he said the goods would bring at retail $202 more than the cost price. Some other testimony, unnecessary to mention, was given.

The first refused instruction, asked by defendant, was to find for the defendant.  Several others refused instructed the jury that, if they believed Goetz was only authorized to solicit orders, the same were not binding until accepted by defendant; and that such acceptance must be by affirmative act, and could not be inferred from the silence of defendant or his omission to notify plaintiff of his refusal until February 12, 1907.  Others related to the measure of damages.  The court charged the jury that there was no evidence that would justify them in finding that Goetz had the general authority to make sales for defendant; and that if there was any room in the case to find for plaintiff it must be upon the theory that the evidence proves that after the transaction between Kaufman and Goetz, the defendant ratified that transaction by assenting to it after the order was received at the home office.  After referring to the fact that there had been no communication by the defendant, the court proceeded to say: "You have to decide the question whether or not the evidence in this case proves that during the time between when the order was received by the defendant in New York, and the time when he undertook to cancel it by writing the letter in February, during that time the defendant had actually in his own mind determined to accept this order.  The mere fact that he did not write on the subject does not settle the question. It is only evidence which has a tendency to prove that he did make up his mind to accept the order, and you have to say whether the evidence is sufficient to prove that.  Before you can render a verdict in favor of the plaintiff, you must find from the evidence that he did in fact make up his mind, after this order came, that he would accept this order.  If he did, that determination by him, that acceptance by him, created a valid contract between the plaintiff and the defendant, and he would not have the power afterwards to revoke it by writing a letter of revocation.  But if he did not in fact make up his mind to accept the order before he wrote this letter, then there never has

been either a direct authority vested in Goetz to make the sale for the defendant, nor had there been any ratification of it afterwards by the defendant; therefore there never was any sale, or never any contract, and there cannot be any verdict save in favor of the defense."

The remainder of the charge related to the measure of damages. The jury returned a verdict for plaintiff for $202; and from judgment thereon defendant appealed.

*Mr. Leon Tobriner* for the appellant.

*Mr. Julius I. Peyser, Mr. M. J. Colbert,* and *Mr. C. W. Darr* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

Our statute of frauds provides that no contract for merchandise "for the price of $50 or upward shall be allowed to be good" unless some note or memorandum in writing of the said bargain be made and signed by the parties to be charged, or their agent thereunto lawfully authorized. Code, sec. 1119 [31 Stat. at L. 1368, chap. 854]. Treating the two sheets of orders in this case as one memorandum signed by the soliciting salesman, Goetz, it is plain from the evidence, and the court rightly so charged, that it was not such a memorandum of sale as satisfied the requirement of the statute. It was not signed by the defendant, nor was Goetz his agent thereunto lawfully authorized. He was but a soliciting agent to take orders for goods and transmit the same to the defendant for his approval and acceptance. It was not actually signed by the plaintiff, and therefore, had the defendant accepted it by immediate communication to the plaintiff, the latter could only have been bound by the contract upon the theory, either that Goetz had been made his agent for the purpose of subscribing and transmitting the order, or that authorizing his name to be inserted in the body of the order was equivalent to actually signing it. Unless he

was so bound, the defendant's acceptance would not have completed a contract between them. Without deciding this question, and assuming that the order may be considered as an offer by the plaintiff to purchase the goods described therein, then, as the court also charged, plaintiff could only recover upon the theory that the defendant had accepted the order. This was undoubtedly correct, for a mere offer to purchase or sell, not accepted by the party to whom it is made, does not constitute a contract. The question to be determined is, What constitutes such an acceptance of an offer as to make it a contract? Passing by the question whether anything less than an acceptance in writing would satisfy the statute, is it sufficient, as the court instructed the jury, that the defendant had actually made up his mind to accept the offer, although no communication of assent or acceptance was made? There was no direct evidence that the defendant had made up his mind to accept the offer, and the jury were told that they might infer this mental assent from his silence during the time which elapsed between the receipt of the order and his letter of February 12, 1907. Without regard to the question whether the acceptance must be in writing in order to complete the contract, it must, in all cases, be an affirmative act. Silence does not amount to acceptance. "Mental assent," as it has been termed,—that is to say, coming to a determination in one's mind to accept,—without communicating that assent, is insufficient. Benjamin, Sales, Bennett's Notes, sec. 39, p. 43; 1 Page, Contr. p. 72, ¶ 43; *Felthouse* v. *Bindley,* 11 C. B. N. S. 869; *Re National Sav. Bank Asso.* L. R. 4 Eq. 9, 12; *Jenness* v. *Mt. Hope Iron Co.* 53 Me. 20, 23; *White* v. *Corlies,* 46 N. Y. 467, 469; *Bowen* v. *McCarthy,* 85 Mich. 26, 48 N. W. 155; *Trounstine* v. *Sellers,* 35 Kan. 447, 454, 11 Pac. 441; *Edge Moor Bridge Works* v. *Bristol County,* 170 Mass. 528, 49 N. E. 918; *Prescott* v. *Jones,* 69 N. H. 305, 306, 41 Atl. 352; *Raysor* v. *Berkeley County R. & Lumber Co.* 26 S. C. 610, 2 S. E. 119; *Royal Ins. Co.* v. *Beatty,* 119 Pa. 6, 9, 44 Am. St. Rep. 622, 12 Atl. 607; *Stockton* v. *Firemen's Ins. Co.* 33 La. Ann. 577.

In *Jenness* v. *Mt. Hope Iron Co. supra,* there was an order

for merchandise and correspondence relating to a modification of the same. There was no express acceptance of the modified order, but from the correspondence the plaintiff had strong ground for a belief that his order would be filled. Referring to this, the court said:

"It is highly probable that when the defendants received the plaintiff's order of October 27 they *intended* to fill it; otherwise they should have notified him, and not by their silence left him to infer that the nails would be forwarded, when they had no intention of doing it. And if such an intention would be sufficient to complete the contract, and render it binding upon the parties, we might, perhaps, feel justified in inferring it from the defendants' silence and other facts testified to by the plaintiff. But we are not satisfied that such an intention, locked up in the breast of a party, and not communicated to the other, is sufficient in any case to constitute such an acceptance of a proposition as to create a binding contract. We think it would not."

No authority opposed to the doctrine has been cited on the appellee's brief, and none has been been discovered by us.

We are of the opinion that the court erred in the charge to the jury. We should have directed a verdict for the defendant as requested. Having held that there was no contract between the parties, there is no occasion to consider the errors assigned in respect of the measure of damages for its breach.

The judgment will be reversed, with costs, and the cause remanded for further proceedings not inconsistent with this opinion.                                   *Reversed.*