C. K. HOUGE, Appellee, v. SAINT PAUL FIRE & MARINE INSURANCE CO., Appellant.

EVIDENCE: Parol As Affecting Writing—Inducement—Representa-
1 tions as to Meaning of Written Clause. Representations made by
the payee of a note as to the *meaning* of an ambiguous clause
thereof, made for the purpose of quieting the fears of the maker
and to induce him to sign the note, may amount to a fraud and,

consequently, open the door to parol evidence of such representations.

PRINCIPLE APPLIED: A property owner was unwilling to take a "term" policy of insurance, which provided for yearly deferred payments, because he was unwilling to make payments *after loss*. The agents of a company pointed out to him a clause in their policy which read, "*subsequent payments shall not be deducted from the loss,*" and represented to him that the meaning of this was that, in case of loss, subsequent premiums would not be deducted from a loss and *would not be collected..* On this inducement, the note, providing for six annual payments of $50 each, was signed. The first payment was made. The company then reinsured the risk in another company and assigned said note to such other company. A loss occurred before the second payment was due, and the insured was paid in full and surrendered his policy as a condition thereto. Later, he took another policy in the company which was assignee of his former note. A second loss occurred after the maturity of the second payment on said old note, and the loss was later agreed on, but the company presented the insured's old note and demanded an offset of $250; because, by the terms of the note, all payments became due by failure to pay the second payment. *Held,* the circumstances amounted to a fraud on the maker, and parol evidence was admissible to show said representations.

EVIDENCE: Parol As Affecting Writing—Authority of Agent—
2  When Immaterial. Parol evidence of representations amounting to a legal fraud, made by the agents of the payee of a contract, are admissible, on the part of the maker of the contract, against the assignee of the contract seeking enforcement against the maker, *without any proof that such agents had authority to make such representations.*

PRINCIPLE APPLIED: See No. 1.

FRAUD: Pleading—Sufficiency. In an action on a note, fraud is
3  sufficiently pleaded by an allegation that the maker signed the note because of certain specified representations, amounting to a legal fraud, made by the agents of the payee, and that, but for such representations, he would not have signed it.

BILLS AND NOTES: Holder In Due Course—Defect In Title of
4  Assignor—Effect. Whenever it appears that the title of the assignor of a negotiable instrument was defective—for instance, tainted with fraud—the one presumed to be a holder in due course must assume the burden to show that he is such in fact.

CONTRACTS: Construction—Conflicting Understanding of Terms—
5  Parol Evidence—Bills and Notes. When the ambiguous terms of

an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it.   (Sec. 4617, Code, 1897.) *And parol evidence is admissible to show such facts.*

*Appeal from Webster District Court.—C. G. LEE, Judge.*

SATURDAY, MARCH 11, 1916.

THIS is an action at law to recover the sum of $400 damages, being the amount of a total loss by fire of merchandise covered by a $400 policy of insurance issued by appellant. The defendant sought by counterclaim to recover upon a premium note. The court directed a verdict for plaintiff, and rendered judgment against defendant, appellant, for $400, interest and costs.   The defendant appeals.—*Affirmed.*

*Kenyon, Kelleher, O'Connor & Price,* for appellant.

*Healy, Burnquist & Thomas* and *C. M. Hanson,* for appellee.

PRESTON, J.—1.   Plaintiff alleged the

1. EVIDENCE: parol as affecting writing: inducement: representations as to meaning of written clause.

issuance of the policy by appellant in the sum of $400, the total loss of the merchandise covered by the policy, the adjustment of the loss in the sum of $400, and the refusal of the appellant to pay the amount of the loss so adjusted.

Defendant admitted the allegations of the petition and its liability thereunder, except for the facts set forth in its counterclaim.   Appellant's counterclaim was based on a promissory note executed by plaintiff to the Century Insurance Co. for a term policy, upon which there remained due the sum of $250, which note was assigned to appellant.

Appellee replied, substantially, that the note was given for a six-year term policy; that the loss under said policy occurred after the payment of the first premium, and that no other premiums were due; that, in settlement and adjust-

ment of the said policy, the plaintiff received $1,505; that the policy insured property in the sum of $1,535; that the plaintiff surrendered the said policy as a condition of the adjustment; that, therefore, no consideration existed for the balance of said note set up by defendant's counterclaim; that it was within the contemplation of the parties that, in case of loss, no further liability should exist on said note; that defendant was not a holder in due course, and it had knowledge of all the facts in the case; that the policy was issued to plaintiff by the defendant's assignor with a full knowledge of all the facts; that, in the note set up as a counterclaim, there was a clause, partially in italic, or heavier type, as follows:

"And it is hereby agreed that in event of loss under this policy subsequent payments shall not be deducted from the loss."

That the agent of defendant who procured said application and note from plaintiff was instructed and advised by the defendant insurance company's assignor that said clause meant that, in case of loss, subsequent installments, as represented by said note, should not become due and payable, and that the same should be void; that the said agent so advised the plaintiff at the time the said note was given and application for insurance made; that the plaintiff relied on said representations made by defendant's agent, and would not have made application for the said policy nor executed said note, but for such representations.

In May, 1911, J. C. Harty, the special agent of the Century Fire Insurance Company for northwestern Iowa, called on T. K. Peterson, a banker, who was the Century Fire Insurance Company's local soliciting agent at Badger, the place where the note was executed, to see if they could not procure some applications for fire insurance, and particularly term insurance. Mr. Peterson told Mr. Harty that he did not want to write term insurance, as he had sold some term insurance on which there had been a loss and that the payments provided for by the term note had been deducted from the loss,

and that this had proved very unsatisfactory. Harty then informed Peterson that the Century Insurance Company had obviated that feature by the clause set out in italic in their premium notes; that the clause meant that, in case of loss, the note would be void as to subsequent payments not due at the time of loss, and that such subsequent payments would not be deducted in any way or collected. With that understanding, Peterson and Harty went to plaintiff to solicit insurance. Peterson testified that he informed plaintiff that the best way to buy insurance was to take out term insurance and save writing it every year, and it was the cheapest; that a note could be given for the premium; and that the Century Fire Insurance Company premium notes provided that, in case of loss, all subsequent payments, as provided for in the note, would be void, and would not be deducted from the loss or collected subsequently. Peterson testified that Harty told plaintiff that, in case of loss, the subsequent payments would not be deducted or collected, and that the policy would be canceled. Plaintiff also testified that he was told by both Peterson and Harty that the meaning of the clause set out in italic was that, in case of loss, no more payments were to be collected or deducted; that he relied on the representations, and would not have signed the application and note if the statements had not been made. Plaintiff reads and writes readily, and carefully read the note that he signed.

After the policy was issued and the note taken, the Century Insurance Company reinsured in the defendant company, and the note was assigned to defendant. Defendant company held the note at the time of the first loss, in February, 1912. On February 22, 1912, a loss occurred under this first policy. This was the policy that was issued on the application signed by plaintiff and solicited by Peterson and Harty, and for which the promissory note in question was given. As before stated, there was a total loss under this policy, and plaintiff was paid $1,505; and, as a condition thereto, the defendant compelled the plaintiff to return his policy for cancellation,

though there was $30 live insurance left on the policy on the item on an outbuilding insured for $35, but upon which $5 damage was allowed in the settlement of the loss. No deduction of subsequent payments on the note was made from this loss.

After the first loss and the payment thereof, plaintiff took out a new policy in the defendant insurance company of $400 on his paints, etc. In June, 1912, and after the second payment on the note in question had become due, plaintiff suffered a second fire, which destroyed the property covered by his $400 policy. This second loss was adjusted, and the defendant admitted its liability in the sum of $400, and in its answer admits that it owes this amount, unless it is entitled to counterclaim for $250, the balance which it alleges is due on the promissory note given for the first policy of insurance. The defendant, after the $400 loss, and prior to this suit, sent $150 to plaintiff, who refused to accept the same and demanded $400, the amount of the adjustment, asserting that there was no liability on the balance of the $300 premium note. Before the second loss occurred, and on May 22, 1912, the second payment of $50 on the note in question became due, according to defendant's theory. The note provides that, if any payment was not made when due, the whole note became due and collectible. On May 27, 1912, the defendant company demanded payment of the balance alleged to be due on said note, $250, and payment was refused. In this suit, appellant renewed the tender of $150. The note referred to is as follows:

"For value received in policy No. 49255, dated on the 22d day of May, 1911, issued by the CENTURY FIRE INSURANCE COMPANY, I promise to pay to said company at its office in Des Moines, Iowa, the following sums on the dates specified, viz.: $50 on the 22d day of May, 1911, and $50 on the 22d day of May, 1912, and $50 on the 22d day of May, 1913, and $50 on the 22d day of May, 1914, and $50 on the 22d day of May, 1915, and $50 on the 22d day of May, 1916, without interest

if paid when due; if not paid when due, then this note is to bear interest at the rate of six per cent per annum from its date, and it is hereby agreed that in the event of loss under this policy *subsequent payments shall not be deducted from the loss,* and further, if the amounts of this note are not paid at maturity, then this policy shall be suspended and the company shall not be liable for any loss or damage that may occur to the property insured while this note shall be overdue and unpaid, and that the whole amount of premiums shall be considered earned and payable.

"(Signed)    C. K. HOUGE.

"P. O. Address, Badger, Webster County, Iowa."

The note is indorsed on the back to defendant by the payee, and a credit of $50 is indorsed thereon, the first payment due May 22, 1911. The trouble occurs over the italicized clause of the note.

The errors relied upon by appellant for reversal are in reference to the trial court's admitting in evidence, over objection, parol testimony to the effect that Peterson and Harty represented to plaintiff before he signed the note that, in case of loss, plaintiff would not have to pay any of the annual installments of the original $300 premium which might become due after such loss, and, further, that such was the meaning of the italicized clause before referred to. The other errors assigned are ruled by the determination of this question.

It is contended for appellant that a soliciting agent for an insurance company has no right or authority to place any construction upon the meaning of the principal's contracts, and that an agent whose duties were merely to appoint soliciting agents, inspect property insured, and adjust some losses, has no authority to bind his principal by placing any construction upon the terms of its written contracts, citing *Garretson v. Merchants' & Bankers' Ins. Co.,* 81 Iowa 727, 729; *Elliot v. Farmers' Ins. Co.,* 114 Iowa 153; *Dryer v. Security Fire Ins. Co.,* 94 Iowa 471, 473, 475; *Winchell v. Iowa State Ins. Co.,* 103 Iowa 189; *Russell v. Cedar Rapids Ins. Co.,* 78 Iowa 216;

*Strickland v. Council Bluffs Ins. Co.,* 66 Iowa 466; *Armstrong v. State Ins. Co.,* 61 Iowa 212; *Baldwin v. State Ins. Co.,* 60 Iowa 497.

And, further, that such testimony was incompetent because it varies and contradicts the terms of the written instrument, and that all prior conversations became merged in the written contract, citing *Cornelius v. Farmers' Ins. Co.,* 113 Iowa 183; *Hartford Fire Ins. Co. v. Davenport,* 37 Mich. 609, 612; *Fitchner v. Fidelity Mut. Fire Association,* 103 Iowa 276.

On the other hand, it is contended for appellee that the representation made by Harty and Peterson touched matters upon which the contract is either silent or ambiguous; that they were made by Harty and Peterson to induce plaintiff to execute the application and the note. The evidence shows that plaintiff relied upon the representations; that he would not have executed the application and note if he had not believed them to be true. Appellee knew, and so stated in his testimony, that it was quite a point not to have to pay subsequent payments after loss. It is contended by appellee that the appellant, by suing on this note, has branded these representations as false, and that they amounted to fraud.

In *Nixon v. Carson,* 38 Iowa 338, 339, this court said:

"False and fraudulent representations as to the subject-matter of a contract, relied upon by the other party, which operated as an inducement thereto, will defeat recovery by the guilty party. The fact that the fraud was perpetrated prior to the execution of the contract does not change the rule. Indeed, to bring a case within the rule, the fraud, of necessity, must have been perpetrated before the consummation of the contract, otherwise it could not have operated as an inducement thereto. It was entirely competent to establish the fraudulent and false representations by extrinsic parol evidence. These principles are elementary and do not demand for their support the citation of authorities. But see 2 Par-

sons on Contracts, p. 66, and Chap. 3, Sec. 12, and notes; 1 Greenleaf's Ev., Sec. 284; *Rohrabacher v. Ware,* Sept. Term, 1873. The fraudulent representations are sufficiently averred in the answer.''

The general rule is, of course, that parol evidence cannot be given to vary or contradict the terms of a written contract. There are many exceptions to this rule, however. We think that appellant fails to distinguish between false representations which operate as an inducement and a parol agreement contemporaneous with a written contract. There is some ambiguity in the language used in the note, and the note is so drawn and the italicized words are such as to readily deceive the ordinary layman, and we are of opinion that, under all the circumstances of this case, such representations would amount to fraud.

The cases cited by appellant are cases either where a parol agreement was sought to be added to a written agreement, and where there was no fraud or false representations averred, or else it was an attempt to hold the insurance company liable in a suit against it because of the acts of its agent. The present case is different. Here we have an action to recover $400, which the defendant insurance company admits is due plaintiff, unless it can counterclaim. The gist of the case, then, is a suit by the defendant insurance company to recover $250 from the plaintiff. It is not a case of plaintiff's seeking to recover $250; for it is admitted that the defendant owes $400. But the question is whether defendant has a debt or claim against plaintiff in the sum of $250, on which it can recover or offset against plaintiff's recovery. While it is true it was not sought to take the unpaid part of the note from the first loss, that is precisely what it is seeking to do in this case; that is, to deduct the $250, the balance alleged to be due on the note, from the $400 loss on the last policy.

Appellant argues that it is not shown that Harty and Peterson had authority from defendant to construe the con-

tract or to make any representations.  If the plaintiff was
seeking to hold defendant to a contract, as
was the fact in the cases cited by appellant,
it might be material to prove that the defend-
ant's agents had the authority to bind the
defendant; but in this case it is the defendant
who is seeking to recover on a contract made for its assignor
by Peterson and Harty.

2. EVIDENCE:
parol as af-
fecting writ-
ing: author-
ity of agent:
when imma-
terial.

Further, it has been held that, where defendant seeks to
recover on a contract to which plaintiff pleads fraudulent
representations by an agent of defendant, it is not necessary
to show that such agent had authority from the defendant to
make the representations.  *Bonewell v. Jacobson,* 130 Iowa 170.

In *Providence Jewelry Co. v. Fessler,* 145 Iowa 74, 78, we
said:

"If defendants were endeavoring to enforce any obliga-
tion against plaintiff based on the agreement which they
say they made with Waggoner, then the question as to the
authority of the latter and the business customs of the plain-
tiff might possibly have some pertinence, and *Smith v. Clark,*
12 Iowa 32, and other authorities cited by appellant would
perhaps be applicable.  As it is they are not in point.

"Whatever may have been the authority or want of
authority in Waggoner, there is no principle of law by which
the company, as his principal or employer, may enforce for its
own benefit a contract procured by his fraud, unless the party
so imposed upon has in some way estopped himself from
pleading or insisting upon the defense."

To the contract which defendant seeks to enforce, and on
which it bottoms its rights, the plaintiff has pleaded as a
defense that he signed the contract because of certain repre-
sentations made by the agents, and that, but
for such representations, he would not have
entered into the contract.  We think this a
sufficient pleading to raise the question of fraud.  It was said
in the *Bonewell* case, *supra,* at page 172, that a plea that

3. FRAUD:
pleading:
sufficiency.

plaintiff entered into a certain contract relying on the fraud-
ulent representation of defendant's agent is in effect a plea
of fraud, and such representations may be shown. It has
been held that in an action on a written contract there is no
rule to prevent the defendant from pleading and proving
fraudulent representations of the other party, upon which he
has relied to his prejudice, as inducement for making the con-
tract sued on. Without quoting from the cases, the following
may be cited: *Bonewell v. Jacobson, supra; Lavalleur v.
Hahn,* 152 Iowa 649, 662; *Morrison Mfg. Co. v. Bryson,* 129
Iowa 645; *Harvesting Machine Co. v. Williams,* 99 Iowa 601,
603; *Cavanagh v. Iowa Beer Co.,* 136 Iowa 236, 240. The fol-
lowing cases have a bearing, also, upon this point: *Hinsdale
v. McCune,* 135 Iowa 682; *Sutton v. Griebel,* 118 Iowa 78;
*McCaskey Register Co. v. Hall,* 140 Iowa 87; *Jewelry Co. v.
Fessler, supra; Rohrabacher v. Ware,* 37 Iowa 85.

Plaintiff's testimony as to representations is corroborated
by Mr. Peterson, the soliciting agent both of the defendant
insurance company and of its predecessor. Mr. Harty, special
agent of the Century Insurance Company and the defendant,
who appointed Mr. Peterson, testified on this trial on another
matter, but he was not called by the defendant to contradict
any of this evidence of the plaintiff, so that there is no dispute
as to the representations. We think the evidence is competent.

2. The plaintiff pleaded that the defendant, who merely
reinsured the business of the Century Fire Insurance Com-
pany, had knowledge of all the facts as fully as the Century
Fire Insurance Company had them, and

**4. BILLS AND NOTES: holder in due course: defect in title of assignor: effect.** plaintiff having pleaded that the note in suit
was procured by fraudulent representations,
the defendant insurance company had the
burden to prove that it was a holder in due
course. It has not met the burden.

In the case of *Bushnell v. Buck Bros.,* 161 Iowa 362, the
court said:

"Counsel quotes only a part of Code Supplement, Sec.

3060-a55, evidently. overlooking the last part of the section. The section reads: 'The title of a person who negotiates an instrument is defective within the meaning of this act when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud.' If the note was obtained from defendants by fraud, or if Trumans negotiated it in breach of faith or under such circumstances as to amount to a fraud, then their title was defective, and, if defective for any of these reasons, the burden was upon plaintiff to show that he acquired it innocently. Code Supplement Sec. 3060-a59; *Cox v. Cline,* 139 Iowa 128, 131; *McNight v. Parsons,* 136 Iowa 390.''

3. It is contended by plaintiff that there was a failure of consideration and that, therefore, parol evidence could be introduced to show it. Their claim is that, because the insurance company adjusted the loss in the sum of $1,505, but as a condition to payment demanded the return of the policy for cancellation, there was a failure of consideration as to the unpaid portion of the note, and that this may be shown by parol. testimony. They say, also, that, as the note does not show the agreement which plaintiff testified to,—i. e., that in case of loss there should be no further payments on the note,— then it was competent to show the collateral agreement, and that the collateral agreement has been performed; and they cite some of the cases heretofore referred to. But, in view of our holding in the first paragraph of the opinion, we deem it unnecessary to further consider this point.

4. It is, perhaps, unnecessary to further discuss the case, but there is one point that we shall briefly refer to, and that is that, even if it be conceded that the note shows the agreement in its entirety, still the words *"subsequent payments shall not be deducted from loss"* could well mean to the average layman that no payments were to be deducted or col-

5. CONTRACTS: construction: conflicting understanding of terms: parol evidence: bills and notes.

lected at any time; that the insured was to have the entire sum of the adjustment; that the policy would be canceled, the note as well, and that would end all further liability. Mr. Peterson and Mr. Houge both testified that that was their understanding of the phrase. They also testified that Mr. Harty said the same. The clause was printed in heavy type. It is, to say the least, somewhat ambiguous, and there may have been a purpose in printing it in heavy type. It may well be that the reason a term policy was unsatisfactory was that, in case of fire, the entire premium note of $300 would ultimately have to be paid; while in an annual premium policy, only the one premium would have to be paid, and that this was the objection made by Mr. Peterson's customers, and, to overcome this objection, defendant made the note as it appears in evidence. To the layman, it could well mean just what Mr. Peterson and Mr. Houge thought it meant, so that the clause could well be considered against the insurance company in the way indicated. The statute, Section 4617, Code, 1897, provides that: ·

"When the terms of an agreement have been intended in a different sense by the parties to it, that sense is to prevail against either party in which he had reason to suppose the other understood it."

Our conclusion is that the trial court rightly directed the verdict, and the judgment is therefore—*Affirmed.*

EVANS, C. J., DEEMER and WEAVER, JJ., concur.