## Howell *v.* McCloskey, Appellant.

Argued May 25, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Earl G. Harrison,* with him *Aaron S. Swartz, Jr., William A. Schnader, High, Swartz, Childs & Roberts,* and *Schnader, Harrison, Segal & Lewis,* for appellants.

*Robert W. Sayre,* with him *Thomas P. Mikell, Walter Biddle Saul, Smillie, Bean & Scirica,* and *Saul, Ewing, Remick & Saul,* for appellees.

OPINION BY MR. JUSTICE ARNOLD, October 5, 1953:

This is an appeal by the defendants from a decree in equity which required conveyance of four shares of stock to the corporation for cancellation or for equal division between the plaintiffs and the defendants, and declaring invalid the action of the shareholders and directors in amending by-laws and electing officers.

The defendant corporation was organized to carry on the business of a predecessor corporation whose assets and liabilities were acquired in 1947 through funds supplied by the plaintiff, Howell. All but six of its shares of stock were owned equally by the plaintiffs, Howell and Gray, and the defendant, Bamford. These three were the only directors.

Howell, Gray and Bamford agreed that attempts be made to acquire the remaining six shares, and that after they were acquired they should be divided among them or cancelled by the corporation. Gray and Bamford were authorized to acquire them. In 1948 McCloskey, one of the defendants, invested in the corporation, and all of the common stock (exclusive of the six missing shares) was divided equally between Howell, Gray, Bamford and McCloskey. The latter was elected an officer and director. Disagreements arose between McCloskey and Howell over the management of the corporation. McCloskey wanted Bamford as the executive head and Howell desired Gray to continue to operate it. Matters were thus at a stalemate when, in February, 1950, McCloskey directed Bamford to purchase the remaining six shares for him, so that they would have a controlling interest in the corpora-

tion. Bamford acquired four shares and McCloskey directed their transfer to the defendant, Pannell, who was attorney for the corporation, and who held the shares for the benefit of McCloskey.

On May 1, 1950, a special meeting of shareholders was held. At this meeting the by-laws of the corporation were amended to increase the number of directors from four to five. Gray and Howell voted against the amendment. Pannell was elected the fifth director, Gray and Howell not voting. On March 16, 1951, a meeting of stockholders was held for the election of directors. Gray and Howell (Gray as proxy), McCloskey, Bamford and Pannell were present. Howell's shares were not voted. However, all the remaining shares including Gray's, were voted, and five directors were elected, Gray voting for each director elected. The directors elected were Howell, Gray, Bamford, McCloskey and a Mr. Toole, each one receiving 1749½ votes, which constituted a majority of the stock even excluding the four shares held by Pannell.

Following this meeting, and on the same day, the new board of directors met and Bamford was elected president of the corporation in place of Gray. All the directors except Howell were present. By unanimous vote Howell was then elected chairman of the board, McCloskey, treasurer, and Pannell, secretary.

On the same day Bamford, as president, informed Gray that his employment with the defendant corporation had terminated. Howell and Gray then instituted this bill in equity. At the trial Howell testified that he, Gray and Bamford had agreed that if the six shares of outstanding stock were acquired "it would be cancelled or would be divided among the three." This Bamford and Gray had not succeeded in getting at the time that McCloskey became a shareholder. At the

directors' meeting arranging for McCloskey to buy into the company, he asked if there were any other shareholders, and Howell explained that he, Gray and Bamford had agreed among themselves that if any were acquired they would either be divided among them or would be cancelled. McCloskey came into the company with this knowledge, but, as Howell testified, there was no agreement on anything. Subsequently McCloskey requested Gray to get the outstanding six shares in and to offer more money for them. The stock was never acquired until McCloskey a year later made the purchase of four shares through Bamford.

The court below determined that these facts did not make out the existence of a contract binding the defendant, McCloskey, as to the disposition of outstanding shares acquired by him through Bamford, as there could be no inference of an acceptance by McCloskey to be so bound; and that McCloskey was not a party to any such agreement. Furthermore, McCloskey's purchase of stock and his election to the board were not in any wise conditioned upon an agreement by him to cancel or divide the outstanding stock if acquired. In fact, plaintiff's own testimony shows that the arrangements for McCloskey's entry into the corporation had already been made when McCloskey himself made inquiries as to any outstanding stock, and he was merely told what the other three had previously agreed upon. The conversations in this regard were too indefinite and incomplete to permit a finding of a contract, and under the evidence it cannot be said that McCloskey accepted the previous arrangements as his own: *Beachler v. Mellon-Stuart Company*, 354 Pa. 341, 47 A. 2d 147. Nor can such a contract be sustained on the basis of silence giving consent, for there was no duty to speak. The reply of Howell to McCloskey about the outstanding six shares did not

create such a duty. It was merely a reply to McCloskey's inquiry. See *The Royal Ins. Co. v. William Beatty,* 119 Pa. 6, 12 A. 607; Restatement, Contracts, §72.

The court below found that McCloskey had agreed to sell to Howell two of the four shares which he had obtained. The evidence on this point, coming from the lips of Howell, is that McCloskey had agreed to sell two of the four shares to him, Howell offering to give a check for the stock. Howell further testified that McCloskey said: " 'George, I don't remember exactly what we paid for those four shares, but we will divide it by two, and I will write you tomorrow and let you know.' " This McCloskey did not carry out. The evidence clearly shows that the four shares of stock cost some $2300. Two shares were of a value of more than $1150, and therefore the alleged contract by McCloskey to sell Howell two shares of stock is unenforcible under the statute of frauds contained in The Sales Act, §4 as amended, 69 PS §42. See *Staples v. Pan-American Wall Paper & Paint Co.,* 63 Fed. 2d 701, 702.[1]

The court below then proceeded to grant relief to the plaintiffs on the basis that "the defendants have breached their fiduciary duty as directors and officers of the defendant corporation by their acquisition of four outstanding shares of stock." This on the theory that McCloskey, when he came into the corporation as a director, was made aware of this delegation of authority by Howell, Gray and Bamford for the purchase of the stock, and that McCloskey acknowledged the existence of such an arrangement by suggesting

---

[1] The title to the original Sales Act of 1915 was amended by the Act of 1925, P. L. 310, to read: "An Act relating to the sale of goods and choses in action," thus overcoming the decision of this Court in *Guppy v. Moltrup,* 281 Pa. 343, 126 A. 766.

that more money be offered for the stock. The court below further observed there was no termination or cancellation of Gray's or Bamford's authority to act as agents *for the board of directors* in seeking to acquire the stock.

That a fiduciary relationship may exist is recognized by the cases and by the provisions of the Business Corporation Law.[2]

While the chancellor was affirmed by the court en banc and made findings of fact, we are of the opinion that such a conclusion cannot be sustained. The rule of law is that officers and directors "must act in the utmost good faith, and cannot deal with the funds and property of the corporation, nor utilize the influence and advantage of their offices, for any but the common interest . . . It is immaterial that their dealings may not have caused a loss or been harmful to the corporation; the test of liability is whether they have unjustly gained enrichment": *Bailey v. Jacobs*, 325 Pa. 187, 194, 189 A. 320. "They must devote themselves to the corporate affairs with a view to promote the common interests and not their own, and they cannot, either directly or indirectly, utilize their position to obtain any personal profit or advantage other than that enjoyed also by their fellow shareholders . . . In short, there is demanded of the officer or director of a corporation that he furnish to it his undivided loyalty; if there is presented to him a business opportunity which is within the scope of its own activities and of present or potential advantage to it, the law will not permit him to seize the opportunity for himself . . .":

---

[2] Section 408 of the Business Corporation Law, 15 PS §2852-408, reading: "Officers and directors shall be deemed to stand in a fiduciary relation to the corporation, and shall discharge the duties of their respective positions in good faith. . ."

*Lutherland, Inc. v. Dahlen,* 357 Pa. 143, 151, 53 A. 2d 143.[3]

There can be no doubt that under normal circumstances a shareholder, director or officer of a corporation has the untrammeled right to purchase for his own use and benefit further stock in the corporation. See *Bisbee v. Midland Linseed Products Co.,* 19 F. 2d 24, certiorari denied, 275 U.S. 564. There was nothing present here to prevent McCloskey's acquisition of the outstanding four shares of stock. The mere fact that he knew of the previous arrangement between Howell, Gray and Bamford cannot interfere with his right to purchase it, and it was found by the court below that there was no sufficient evidence that there was any agreement to the contrary. There never had been any action taken by the *corporation* relating to the acquisition of this stock. All that existed was the arrangement of the owners of the majority of the stock as individuals and for their individual benefit. Howell, Gray and Bamford made such an arrangement prior to the entry of McCloskey into the corporation. They sought to do the same thing that McCloskey afterwards did, to wit, acquire for themselves jointly, the outstanding six shares of stock. Not only was the corporation not harmed by McCloskey's action, but nothing has been done interfering with the corporation's rights of property. Nor did the defendants utilize their positions, or the money or property of the corporation, in their acquisition of stock.[4]

---

[3] In *Bailey v. Jacobs,* 325 Pa. 187, 189 A. 320, the defendant personally used the corporation's assets; in *Lutherland, Inc. v. Dahlen,* 357 Pa. 143, 53 A. 2d 143, the defendants acquired property which it would have been to the advantage of the corporation to have, and they were unjustly enriched thereby, i.e. the corporation suffered a detriment.

[4] The cases cited by appellees are not applicable on their facts. In *Irving Trust Co. v. Deutsch,* 73 Fed. 2d 121; *Commonwealth*

To summarize, there was no breach by McCloskey of any fiduciary duty for the reasons: (1) There did not exist any resolution of the corporation concerning these outstanding shares. (2) No funds of the corporation were used in the acquisition of the shares. (3) No detriment to the corporation resulted from the purchase of the shares by McCloskey. (4) There was no unjust enrichment of the defendants at the expense of the corporation. The question here is as to the control of the corporation between two sets of stockholders, each of whom had the unquestioned right to purchase from other stockholders the shares of stock in question, and does not concern the breach of any duty owed to the corporation. See *DuPont v. DuPont,* 256 Fed. 129, certiorari denied, 250 U.S. 642.

The decree is reversed and the bill dismissed at the cost of the plaintiffs.

*Finance Corporation v. McHarg,* 282 Fed. 560; and *Kimmell v. Geeting,* 2 Grant 125; there had been formal action taken by the corporation for purchase of stock acquired by the officer and director; and in *Durfee v. Durfee & Canning, Inc.,* 80 N.E. 2d 522 (Mass) the officer formed another company which resold gasoline at a mark-up and then pocketed profits made at the expense of the corporation.