Maguire, Appellant, *v.* Osborne.

Argued November 21, 1956.   Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Dunstan McNichol,* for appellant.

*Floyd W. Tompkins,* with him *James A. Peace* and *Tompkins & McNally,* for appellees.

OPINION PER CURIAM, March 18, 1957:

We have examined the record and find no fraud or overreaching. Cf. *Carr v. Carr O'Brien Co.*, 386 Pa. 196, 125 A. 2d 607; *Jones v. Costlow*, 349 Pa. 136, 36 A. 2d 460. Furthermore, we agree with the lower Court that there is no merit in plaintiff's claim. The Decree is affirmed, at appellant's costs, on the following excerpts from Judge REIMEL'S opinion:

"This case comes before the Court on plaintiff's exceptions to an adjudication of ALESSANDRONI, P.J. dismissing her complaint in equity. In the complaint she alleged that defendants were issuing additional common stock of defendant corporation at a grossly inadequate price. She asked the Chancellor to enjoin such issuance, or the transfer of stock so issued.

"Defendant corporation had an authorized and issued capital of $2,000 composed of 40 shares with a par value of $50.00 per share. Plaintiff owned twelve shares constituting a 30% interest. Twenty-one shares, constituting a controlling interest, were held in escrow for defendants Hofmann under an agreement between them and defendant Osborne by which the Hofmanns were to get the stock outright in July, 1957. In the meantime, Osborne retained voting and dividend rights. Seven shares were owned outright by Osborne. Defendants Hofmann and Osborne and Plaintiff were directors of the corporation.

"On May 24, 1954, at a stockholders' meeting, articles of the corporation were amended to increase the authorized capital from $2,000 to $100,000 consisting of 2,000 shares of common stock of the par value of $50 per share. Plaintiff was present and voted against the amendment.

"At a meeting of the Board of Directors on April 12, 1955, a resolution providing for the issuance of 200

new shares at $50 per share was passed. Plaintiff was given the right to buy 60 shares, or 30% of the new issue. Defendant Osborne had the right to buy the rest. Plaintiff was present and voted against the resolution.

. . .

"A review of the testimony discloses that the defendant corporation was under-capitalized. Funds were needed for expansion and improvement. Loans of money to the corporation with a $2,000. authorized capital could only be made if the officers of the corporation would assume personal liability. The directors of the corporation, of whom the plaintiff was one passed a resolution for the issuance of 200 additional shares at par and voted to grant preemptive rights to plaintiff and others in order that they may protect their interests, although such rights do not appear in the Articles of Incorporation. Plaintiff voted against the increase of authorized capital at both the stockholders' and directors' meetings. She testified that she is financially unable to purchase additional shares and now contends that the new shares were issued at a grossly inadequate price.

"The stock of the defendant corporation is closely held. Its book values, earnings or dividends alone do not establish the worth of its stock. Its stock has never been sold. It has no market value* : See *Moffett Estate,*

---

* The only dividends declared by Fibreflex from 1948 to 1953 inclusive totaled $4,000. An additional and very important reason why the stock of this small, closely held, speculative business corporation had no market and would not be bought by an outsider is apparent from *Maguire v. Osborne*, 384 Pa. 430, 121 A. 2d 147. In that case this Court sustained a corporate agreement with the Hofmanns and Osborne who comprised the officers of the corporation and all but one of the directors, under which the Hofmanns received in addition to their salaries 50% of the corporate net profits before taxes. Obviously these unusual facts very materially affected the market value of the corporate stock as well as its marketability.

369 Pa. 159, 163. The book value of its stock is far from conclusive as to its market salable value: See *Jones v. Costlow et al.*, 349 Pa. 136, 140. [Also *Aldrich v. Geahry*, 367 Pa. 252, 255, 80 A. 2d 59.] The fixing of the value of the new stock at par with the offer of preemptive rights gave to all of the stockholders, including the plaintiff, the right to purchase the newly issued stock at the same price as that of the original issue. The fact that plaintiff is financially unable to purchase the newly issued stock is unfortunate but it is to be observed that the fixing of the value of the newly issued shares at a higher price would be no solution to her predicament: See *Hyman v. Velsicol Corp.*, 342 Ill. App. 489, 97 N.E. (2d) 122. Moreover, the directors were not obliged to consider plaintiff's necessitous circumstances, nor is there a shred of testimony to indicate that in the policy they pursued the directors were influenced by selfish motives or that they were scheming against plaintiff's interests: *Jones v. Costlow et al.*, 349 Pa. 136, 142.

"It is hornbook law that officers and directors owe a duty to stockholders to act in the utmost good faith and that they must act for the common interest of all the stockholders. The offer to plaintiff of preemptive rights is evidence of good faith. Plaintiff is a minority stockholder and the directors of the corporation owe her a duty to take no action for the purpose of injuring her minority holdings. A careful review of the record does not disclose that the defendant directors acted in bad faith or with improper motives. In fact plaintiff's expert witness concedes that the corporation was undercapitalized. The growth of this corporation required increased capitalization. The action taken by the directors is a proper one. They fixed a value which is fair in the light of all the circumstances and should

not be subject to the peril of having a court or expert witness merely differ as to its value: *Stevens v. Hale-Haas Corp.*, 249 Wis. 205, 230.

. . .

"The plaintiff has not proved that defendant directors violated their fiduciary relationship to stockholders; that they were influenced by selfish motives; or that they schemed against plaintiff's interests. . . .

"Plaintiff has failed to prove that the price of the newly issued shares at par was inadequate. . . .

"The stock of the defendant corporation has no market value.

. . .

"Defendant directors acted in good faith and did not scheme to deprive plaintiff as a stockholder of a substantial part of her interest in the surplus of defendant corporation. . . .

"The individual defendants, by purchase of a ratable portion of the new issue of stock, did not violate their duty as directors. . . ."