Stull *v.* Bellefonte Stone Products
Corporation (et al., Appellants).

Argued November 11, 1964. Before ERVIN, WRIGHT,
WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.
(RHODES, P. J., absent).

*Loyal H. Gregg,* with him *White, Jones and Gregg,* for appellants.

*Robert E. Mertz,* with him *David B. Buerger,* and *Buchanan, Ingersoll, Rodewald, Kyle & Buerger,* for appellee.

OPINION BY ERVIN, J., December 16, 1964:

This appeal is concerned with the right of a president of a corporation to recover unpaid salary from stockholders of the corporation. The court below, by its order, entered judgment for Harold R. Stull, president of Bellefonte Stone Products Corporation, against the defendants, E. R. Scheuner and Joseph Mills, two stockholders of the corporation, in the respective amounts of $2,574.00 and $3,332.00, with interest, for unpaid salary due to Stull as president of the corporation. The two stockholders have appealed.

The Act of May 5, 1933, P. L. 364, 15 PS §2852-514, provides: "A. A shareholder of a business corporation shall not be personally liable for any debt or liability of the corporation, except salaries and wages due and owing to its laborers and employes, for services rendered to the corporation. In such event, every shareholder shall be personally liable in an amount equal to the value of the shares of the corporation owned by him. . . ."

The appellants argue that the above provision does not "apply to the chief executive officer who has complete control of the corporation."

The Act of June 25, 1864, P. L. 947, §7, provided for individual liability of the stockholders "for debts

due mechanics, workmen and laborers employed" by the company. By the Act of April 29, 1874, P. L. 73, §14, the liability of shareholders was limited to "all work or labor done . . . to carry on the operations of each of said corporations." Section 514 of the Business Corporation Law of 1933, above quoted, enlarged the language theretofore used by the use of the phrase "*salaries* and wages due and owing to its laborers and *employes*." (Emphasis supplied) The word "wages" is commonly used with reference to pay of laborers and workmen, whereas the word "salary" may be used with reference to the pay of any employe, no matter how big his position or how large his pay. We are of the opinion that the legislature intended, by the 1933 law, to include any employe of the company, whether he be president or common laborer.[1]

While the 1933 act does not expressly include officers, we believe their inclusion is implicit from the words "salaries" and "employes." Construing the words in their popular sense, the inference to be made is that salaried employes include officers of the corporation.

The 1904 Quebec case of *Fee v. Turner,* 13 B.R. 435, is not in point because the section involved covered only "clerks, laborers, servants and apprentices." The New York cases of *Bristor v. Smith,* 158 N.Y. 157, 53 N.E. 42, and *Harris v. Lederfine,* 196 Misc. 410, 92 N.Y.S. 2d 645 (N.Y. S. Ct. 1949), are not in point because the New York statute did not include the word "salaries."

It is also argued by the appellants that Stull should not be entitled to recover his unpaid salary

---

[1] The lower court opinions which our search has revealed are in accord: See *McCaskell v. Purity Fibre Products Corporation,* 22 Pa. D. & C. 1; *McDowell v. C. H. Boley Co.,* 34 Pa. D. & C. 307; *Harris v. McLaughlin,* 79 Pa. D. & C. 232; *Bernstein v. Cosmopolitan Food Plan, Inc.,* 14 Pa. D. & C. 2d 197.

from the shareholders because he used funds of the corporation to repay a loan to himself instead of paying his own salary and other creditors. Unpaid salary in the amount of $17,400.00 was due to Stull. If the payments of $11,350.00 applied against loans which he had made to the company, had been applied against salary, the amount of salary owed would still have been $6,050.00, or an amount greater than the aggregate of the judgments against the two appellants.

While it is true that in *Taylor v. Penrose Motor Co.*, 101 Pa. Superior Ct. 486, we held that an officer or director of an insolvent corporation may not satisfy his claims against the corporation in preference to those of other creditors similarly situated, we do not believe that this case presents such a situation. At the time of the foreclosure of the mortgage against the corporation, it had current liabilities of approximately $10,000.00, most of which was the company's indebtedness to the appellee. In addition to the mortgage, there was indebtedness on long term notes which did not mature until sometime later on. There is nothing in the record to indicate that any corporate indebtedness on a parity with the debt to the appellee went unpaid.

Judgment affirmed.

---

DISSENTING OPINION BY MONTGOMERY, J.:

I cannot agree that the appellee Stull should recover in this case.

Although Bellefonte Stone Products Corporation early in 1953 advertised for someone primarily to invest more capital in the company, Stull, who responded to the advertisement, was able to secure a contract with the company whereby he became a stockholder, a creditor, and an employe. He loaned the company $15,000 at five per cent interest for a period of 21 months. In consideration therefor he took a judgment

note whose due date was December 24, 1954. He secured employment as assistant to the president at $100 per week until June 30, 1953, and at $500 per week from July 1, 1953, to June 30, 1956, under a contract in which he agreed to "devote to such work so much of his business time as may be necessary to perform efficiently such duties related to his position as the Board of Directors may direct." The later provision, including the stipulation of the salary fixed at $500 per week, was subject to cancellation by Bellefonte at any time on ninety days' notice. Furthermore, he received 200 shares of common stock as a bonus or gratuity.

However, before his employment at the rate of $500 per week had commenced, Stull took over the company completely. On May 14, 1953, Mr. Mills resigned, as president; Mr. Scheuner, as secretary and treasurer; and Mr. Post as vice president. On that day Stull was elected a director and president. Mr. Marlier and Mr. Buerger, whom Stull designated, were elected as directors and officers; Mr. Buerger was elected vice president; and Mr. Schoyer, another designee of Stull, was elected secretary. Further, Stull moved the business office of the company to Pittsburgh, where it shared quarters occupied by Stull in the conduct of his other interests. Because Stull became president of the company he could not also serve in the capacity of assistant to the president. Therefore, his election as president terminated his employment as assistant to the president, as well as the contract of employment providing for the position.

However, assuming that Stull's compensation as provided by the contract continued, regardless of whether he acted both as president and assistant to the president, which is an unreasonable assumption, his subsequent actions constituted a breach of trust to the other stockholders, which should preclude any recovery against them.

Officers and directors are in the position of fiduciaries in their relationship to the corporation and to the stockholders. Act of May 5, 1933, P. L. 364, art. IV, §408, 15 P.S. §2852-408. The duties and obligations of the directors and officers approach those of true trustees; and, if the capital of the corporation is impaired or would be impaired by a contemplated course of action, the directors are said to hold their powers in trust for all creditors. *Maguire v. Osborne*, 388 Pa. 121, 130 A. 2d 157 (1957); *Howell v. McCloskey*, 375 Pa. 100, 99 A. 2d 610 (1953); *West, for use, v. Hotel Pennsylvania*, 148 Pa. Superior Ct. 373, 25 A. 2d 593 (1942); *Taylor v. Penrose Motor Co.*, 101 Pa. Superior Ct. 486 (1930).

Stull relies on the default in the payment of his salary and the monthly interest on the indebtedness to him as reasons for accelerating the due date of the loan. However, he was responsible for the default in the payments to himself. Although there was money available to pay his salary, Stull chose to withdraw over $11,000 from the company funds for application on the undue obligation; he deliberately defaulted on the payment on the chattel mortgage, which required monthly payments of $400; he continued his contract with the corporation (if it still existed) without electing to terminate it under the cancellation clause when he knew that the business of the company would not meet such an obligation; and he failed to call a meeting of the stockholders to advise them of the threatened foreclosure of the mortgage and did not notify them of the sale until just a few days before it was held.

The record also indicates that Stull was more interested in using the company for the purpose of sale or merger than in operating its affairs on a profitable basis. When he found that he could not accomplish this purpose, to prevent a personal loss he withdrew all available funds.

46

He had no right to salary under the contract; and, if he had, he forfeited that right because of his attempts to seek an advantage over other creditors and over his fellow stockholders, on whom, clearly, the Legislature did not intend to impose liability under art. V, §514 of the Business Corporation Law of 1933, P. L. 364, 15 P.S. §2852-514, under such circumstances.

I should reverse and enter judgment for the appellants. Had Bellefonte Stone Products Corporation appealed, I should enter judgment for it also.

Therefore, I dissent.

WRIGHT, J., joins in this dissent.