**Francis Shunk BROWN, 3rd, ESQ., Trustee, in Bankruptcy for I. J. Knight Realty Corp.**

v.

**PRESBYTERIAN MINISTERS FUND, a Pennsylvania Corporation.**

Civ. A. No. 69–2855.

United States District Court,
E. D. Pennsylvania.

March 15, 1972.

Arthur E. Newbold, III,. Dechert, Price & Rhoads, Philadelphia, Pa., for plaintiff.

Bernard J. Smolens, Sterling H. Schoen, Jr., Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendant.

OPINION AND ORDER

HANNUM, District Judge.

Before the Court is a controversy between the Trustee in Bankruptcy for I. J. Knight Realty Corporation (Knight) and a creditor, the Presbyterian Ministers Fund (Fund). The controversy concerns the nature and amount of Knight's obligation to the Fund as mortgagee of the former's one time sole asset, the fire torn and now destroyed Fretz Building, Tenth and Diamond Streets, Philadelphia. With the approval of this Court, counsel for the respective parties have prepared and filed an

agreed stipulation of facts which affords a basis for resolution of the case. Since there is no dispute as to the facts, the briefs submitted by counsel shall be considered as supporting cross motions for summary judgment pursuant to Fed.R. Civ.P. 56, 28 U.S.C.

The following facts have been stipulated:

1. On or about December 8, 1955, defendant, a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, made a mortgage loan in the amount of $200,000 to I. J. Knight Realty Corp., a closely held corporation. The loan was secured by a mortgage on the land and building known as the Fretz Building, located at 10th and Diamond Streets in Philadelphia.

2. All of the shares of the capital stock of Knight were owned by Maurice Shorenstein, Joseph Levinthal and Irving J. Schwartz.

3. At the time of making the aforesaid loan, defendant obtained independent appraisals of the mortgaged real estate in the amounts of $533,000 and $560,000, respectively.

4. On or about May 8, 1959, all of the outstanding shares of the capital stock of Knight were sold by Messrs. Shorenstein, Levinthal and Schwartz to one Nathan C. Hoffman. As of that date, the principal balance of the mortgage was $175,000.

5. On or about May 9, 1959, the mortgaged premises were substantially damaged by fire. Claims against the insurer of the premises were settled by Knight for a sum in excess of $112,000 of which $20,000 was used to reduce the mortgage principal to $155,000.

6. From 1959 to 1962, only $6,000 was paid on account of the mortgage principal, reducing the principal balance to $149,000. By reason of these circumstances, the mortgagor was in default with respect to amortizing the mortgage.

7. In September 1962, Knight defaulted on the interest due on the mortgage and defendant became mortgagee in possession.

8. On November 16, 1962, defendant agreed to sell to Nathan C. Hoffman, President of Knight, *he acting with the knowledge and approval of all of Knight's officers, directors, and shareholders,* the aforesaid mortgage having a principal balance of $149,000 for $65,-000.

9. *Thereafter,* on November 16, 1962 Knight filed a Petition under the provisions of Chapter XI of the Bankruptcy Act and plaintiff, a member of the Bar of this Court, was appointed receiver by the Honorable Francis L. Van Dusen.

10. Thereafter on November 16, 1962 defendant gave to Seymour S. Hoffman a letter reflecting the agreement referred to in Paragraph 8 hereof and acknowledging the receipt of $2,500 toward the purchase price of $65,000. At this time defendant knew of the filing of the aforesaid petition.

11. Seymour S. Hoffman was and was by defendant known to be an officer and shareholder of Knight.

12. On or about November 26, 1962, defendant gave to Seymour Hoffman a letter acknowledging the receipt of an additional $2,500 toward the purchase price of $65,000.

13. Defendant did not at any time notify the receiver or his counsel of the agreement with Nathan C. Hoffman.

14. On January 1, 1963, the Fretz Building, which was the sole asset of Knight, was totally destroyed by fire.

15. In or about May 1963, in consideration of the return of the $5,000 referred to in the letters of November 16 and 26, 1962, and for other considerations, Nathan C. Hoffman and Seymour S. Hoffman agreed to and did in fact release defendant of any obligation under the aforesaid agreement with Nathan C. Hoffman or set forth in the aforesaid letters.

16. In May 1963, Knight was declared a bankrupt and plaintiff was elected Trustee of the bankrupt corporation.

On the basis of the foregoing facts, the Trustee in Bankruptcy seeks a decree from this Court specifically enforc-

ing the Fund's agreement to sell the Fretz Building mortgage to Nathan Hoffman. The legal theory advanced by the Trustee is that the Fund's offer of sale constituted a corporate opportunity available to Knight; that Nathan Hoffman's acquisition of that opportunity constituted a breach of his fiduciary duty to act in good faith for the best interest of Knight as one of its officers; that the corporation, through the Trustee, is entitled to impress a constructive trust upon "the deal"; and that, although the agreement was terminated before the Trustee asserted any claim to it, the corporation is entitled to its specific performance in order to conserve the *res* of the constructive trust.

By way of defense, the Fund first argues that Hoffman's agreement to purchase the mortgage at a discount was not a corporate opportunity because the corporation was insolvent and unable to avail itself of the opportunity. Second, assuming that a corporate opportunity did exist, the Fund argues that Hoffman never usurped it for the acquisition was with the full knowledge and approval of the corporation. Third, the defendant asserts that even if Hoffman did breach a fiduciary duty owed to the corporation, no cause of action lies against the mortgagee as an innocent third party owing no fiduciary duty to the corporation. Without intimating a view as to the first and third arguments, this Court finds the second to be dispositive of the case.

■■ Like the business corporation laws of other states, Pennsylvania imposes a fiduciary obligation upon corporate officers to act in good faith for the best interest of the corporation they serve.[1] In Pennsylvania it is clear that corporate officers may not usurp opportunities available to the corporation. Lutherland, Inc. v. Dahlen (1947), 357 Pa. 143, 151, 53 A.2d 143, 147. In this regard, it has been held that the availa-

bility of a corporate debt for purchase at a discount constitutes a "corporate opportunity". Weissman v. Weissman, Inc. (1953), 374 Pa. 470, 97 A.2d 870. So also, it is clear that if a corporate officer, in breach of his fiduciary duty, personally acquires property constituting a corporate opportunity, that property may be subject to a constructive trust for the benefit of the corporation. Weissman v. Weissman, Inc., *supra*; Bailey v. Jacobs (1936), 325 Pa. 187, 194–195, 189 A. 320. Recognizing, therefore, the existence of a corporate opportunity in the present case, and assuming *arguendo* that the corporation was capable of seizing it, the question becomes whether there exists any circumstance under which a corporate officer may acquire such an opportunity for himself.

■ This Court regards the proposition that a corporation need not acquire all corporate opportunities presented to it as axiomatic. The fiduciary duty imposed upon corporate officers and directors requires them to disclose opportunities available to the corporation. Once aware of the opportunity the corporation may seize or ignore it. If the directors and shareholders, once aware of its existence, consent to the acquisition of an opportunity by an officer or director, the opportunity ceases to be corporate and the fiduciary is free to acquire it personally. See Weissman v. Weissman, Inc., *supra* 374 Pa. at 475, 97 A.2d 870.

■ By stipulation in the present case the parties have agreed that Hoffman's acquisition of the mortgage was with the "knowledge and approval of all of Knight's officers, directors, and shareholders." In the view of this Court such corporate assent relieved Hoffman of any further fiduciary duties. Having breached no duty to the corporation, plaintiff has no cause of action.

---

[1]. "Officers and directors shall be deemed to stand in a fiduciary relation to the corporation, and shall discharge the duties of their respective positions in good faith and with that diligence, care and skill which ordinarily prudent men would exercise under similar circumstances." 15 P.S. § 1408 (1968)."