**Ceco Corporation v. Bar-Jay Associates, Inc.**

*John C. Sullivan,* for plaintiff.
*Herbert G. Rupp, Jr.,* for defendants.

CALDWELL, J., July 16, 1974.—Plaintiff corporation is a manufacturer and fabricator of structural steel members used in the construction of buildings. Defendant corporation is engaged in the business of buying and selling construction materials and defendant Ruth appears to be the principal person involved in the operation and ownership of Bar-Jay. In 1972, plaintiff sold to Bar-Jay substantial quantities of structural steel for which it has not been paid, whereupon this suit was filed against the corporation and against Charles M. Ruth, Jr., individually.[1] Preliminary objections in the nature of demurrers have been filed concerning the claims against Charles M. Ruth, Jr., and are before us for disposition.

In Counts 2 and 3, plaintiff attempts to institute a creditor's derivative action based on a claimed beneficial interest in Bar-Jay Corporation, which, plaintiff avers, arose as a result of an unsatisfied judgment against Bar-Jay.

---

[1] Barbara J. Ruth, the wife of Charles M. Ruth, Jr., was originally named as a defendant but this litigation has been discontinued as to her.

No case has been cited or found where a creditor's derivative action has been instituted based on this type of beneficial interest.

The Pennsylvania statute, Act of May 5, 1933, P. L. 364, as amended, 15 PS §1516(A), and Pennsylvania Rule of Civil Procedure 1506, applicable to stockholders' derivative actions, make no mention of the remedy sought by the plaintiff creditor.

The origin and policy considerations underlying a stockholder's derivative action suit do not apply to derivative action suits by creditors. The origins of the remedy are in equity. "Equity came to the relief of the stockholder, who had no standing to bring civil action at law against faithless directors and managers": Cohen v. Beneficial Industrial Loan Corp., 337 U. S. 541, at 548, 69 S. Ct. 1221, at 1226 (1949). Since an adequate legal remedy was available to disappointed creditors, there was no need for equity to come to their aid. In Mitchell et al. v. Commercial Coal Co., 25 Cambria, 230 (1963), the court refused equity jurisdiction to plaintiffs who were not stockholders of the defendant corporation because such plaintiffs had an adequate remedy at law.

The aim of this equitable remedy is to make the management of a corporation legally accountable to the owners of the corporation, i.e., the stockholders. See Dykstra, The Revival of the Derivative Suit, 116 U. of Pa. L.R. 74 (1967). The policy of making the management of a corporation responsible to the individual owners of that corporation, who would otherwise be unable to enforce their rights as owners, is radically different from making the management of a corporation responsible to outside creditors, already having adequate remedies at law. "Creditors of a corporation do not occupy the same relation to the directors as do the stockholders": Ellis v. Stine, 36 D. & C.

2d 338, at page 347 (Leb. Co., 1964). Furthermore, in a stockholder's derivative suit, "The suit is for the benefit of the corporation and all the stockholders and not for plaintiff individually": 18 C. J. S. §567, pages 1288-89, whereas here the suit is clearly and solely for the benefit of plaintiff.

Finally, the Pennsylvania rule requires that for a shareholder to sue on behalf of the corporation, he must have had an ownership interest in the corporation at the time of the occurrence of the transaction for which the complaint is lodged. If, by analogy, a similar rule is applied to plaintiff, then counts 2 and 3 of the amended complaint would fail, since the alleged beneficial interest in Bar-Jay arose after the transaction complained of. (For rationale of the rule, see Weston v. Reading Company, 445 Pa. 182, at 192,·282 A. 2d 714, at 719 (1971).)

For the foregoing reasons, the demurrer to counts 2 and 3 of the complaint must be sustained.

In count 4, plaintiff sets forth a cause of action for fraud against the individual defendant. Among other things, it is alleged that defendant intentionally informed plaintiff that Bar-Jay was awaiting payment from the general contractors and that Ceco would be paid as soon as Bar-Jay received payment when, in fact, Bar-Jay had already been paid by the general contractors. Plaintiff further alleges that defendant's misrepresentation was intended to induce plaintiff to forego his remedy under the Public Works Contractors' Bond Law of 1967, Act of December 20, 1967, P. L. 869, 8 PS §191, that plaintiff in justifiable reliance upon defendant's assurances did forego the above statutory remedy and that, as a result, plaintiff has been damaged.

From the allegations listed above, it is clear that plaintiff has satisfied the essential requirements of a

cause of action for fraud as determined by the Pennsylvania Supreme Court in Scaife Co. v. Rockwell-Standard Corp., 446 Pa. 280, 285 A. 2d 451 (1971). Defendant's contention that the reliance of plaintiff is so unreasonable that the court should withdraw the count from the factfinder is without merit.

Pennsylvania Rule of Civil Procedure 1019(b) requires that "[a]verments of fraud . . . be averred with particularity." The precise standards of particularity needed to satisfy the demands of Rule 1019(b) were discussed by the Pennsylvania Supreme Court in Bata v. Central-Penn National Bank, 423 Pa. 373, 224 A. 2d 174, cert. den., 386 U. S. 1007 (1966):

"While it is impossible to establish precise standards as to the degree of particularity required in a given situation, two conditions must always be met. The pleadings must adequately explain the nature of the claim to the opposing party so as to permit him to prepare a defense and they must be sufficient to convince the court that the above averments are not merely subterfuge": Page 380.

Plaintiff has satisfied the two conditions enunciated above and, therefore, the demurrer to count 4 of the complaint must be overruled.

In counts 5 and 7, plaintiff alleges that the individual defendant misappropriated or distributed for his own personal use funds of the corporation, thereby breaching his fiduciary duty to Bar-Jay and the plaintiff creditor, and causing the corporate defendant to be unable to pay its debt to plaintiff. Plaintiff also argues that the corporate veil of Bar-Jay should be pierced and the individual defendant be held personally liable for the debts of the corporation to plaintiff.

The question for the court to determine is whether or not these two counts contain sufficient statements of

facts, which, if proved, would warrant the imposition of liability on Charles M. Ruth, Jr., individually.

In its complaint, plaintiff avers that defendant owes a fiduciary duty to the creditors of Bar-Jay by reason of defendant's position as officer, director and majority shareholder. In its brief, plaintiff cites West, for use, v. Hotel Pennsylvania, Inc., 148 Pa. Superior Ct. 373, 25 A. 2d 593 (1942), as stating the Pennsylvania rule:

"The directors of a corporation are trustees of the capital of the company, their powers are held by them in trust for all the creditors and cannot be used for their own benefit." Page 377.

In West, during the time the capital of the corporation was impaired, but prior to the declared bankruptcy of Hotel Pennsylvania, Inc., of which West and his wife were sole stockholders, judgment was confessed on a note of the corporation payable to West. At the bankruptcy proceedings, the United States District Court directed the trustee in bankruptcy to determine the validity of the judgment, since the corporate records had termed the advancements "contributions." The trial court held, and the appellate court concurred, that the board was without power to transform West's gift into an obligation to repay.

The original and complete pronouncement of the rule stated in West occurred in Kersteter's Appeal, 149 Pa. 148 (1892), and was subsequently restated verbatim in Mueller v. Monongahela Fire Clay Co., 183 Pa. 450 (1898), Pangburn v. American Vault, Safe & Lock Co., 205 Pa. 83 (1903), and Taylor v. Penrose Motor Co., 101 Pa. Superior Ct. 486 (1930):

"[T]he principle stated in §787 of Morawetz on Corporations, as follows: 'Directors of an insolvent corporation, who have claims against the company as creditors, must share ratably with the other creditors, in a distribution of the company's assets. They

cannot secure to themselves any advantage or preference over other creditors by using their power as directors for that purpose. Their powers are held by them in trust for all the creditors, and cannot be used for their own benefit' ": Page 154.

The factual situation to which the rule refers is clear from the text and cases cited above, i.e., the situation where creditor directors of an insolvent corporation satisfy their claims against the corporation in preference to those claims of other creditors similarly situated. Although plaintiff has only alleged that defendant diverted the funds for his own use and benefit (amended complaint, paragraph 24(a)), it is not unreasonable to infer for the purposes of this demurrer that the defendant might have been a creditor of Bar-Jay Associates, Inc. Such an inference is not necessary, if one accepts a broader statement of the directors' responsibility to creditors, like the one stated by Judge Montgomery in his dissenting opinion in Stull v. Bellefonte Stone Products Corp., 205 Pa. Superior Ct. 40, 205 A. 2d 677 (1964):

"[I]f the capital of the corporation is impaired or would be impaired by a contemplated course of action, the directors are said to hold their powers in trust for all creditors." (citations omitted) Page 45.

In its brief, defendant asserts that the officers of a corporation owe no fiduciary duty to creditors of a corporation and cites the clear language of the court in Ellis v. Stine, 36 D. & C. 2d 338 (Leb. Co. 1964):

"There is no fiduciary relation between officers of a corporation and creditors. Creditors of a corporation do not occupy the same relation to the directors as do the stockholders. The officers and directors of a corporation are merely agents of the corporation, and their duties and accountability are primarily to the corpo-

ration and not to its bondholders or other creditors: 19 C.J.S. §837": Page 347.

Again, in order to understand more fully the application of the rule, it is necessary to examine the complete text of the rule. From where the Ellis court stopped, the statement of the law in 19 C. J. S. §837 continues:

"The directors of a corporation bear no other relation to its creditors than that of the agent of an individual to his creditors, *at least prior to insolvency of the corporation,* and until then the creditors have no special rights against the directors except such as may be created by statute . . . , or which may arise from tortious conduct imposing direct liability on the directors.

"
. . .

"In some cases a distinction is made between solvent and insolvent corporations, it being held that the directors of a solvent, going corporation do not occupy a trust or fiduciary relationship to the creditors, but that when the corporation becomes insolvent a trust or quasi-trust relationship arises between the directors and creditors. In jurisdictions where this distinction prevails, the trust duty of the directors to the creditors arises when such a condition of corporate affairs confronts the directors that it is obvious that the company is insolvent. Hence it may arise before actual steps either voluntary or involuntary have been taken to wind up the corporate business."

Based on the full texts of the West rule and the Ellis rule, it appears that Pennsylvania is a jurisdiction which makes a clear distinction between the duties owed to creditors by the directors of solvent and insolvent corporations.

Although plaintiff described Bar-Jay as insolvent in his supplemental brief, no such description or alle-

gation of insolvency is contained within his complaint. It is the time-honored principle in Pennsylvania that a court in passing on a demurrer can only consider matters which arise out of the complaint itself: Bonanni v. Weston Hauling, Inc., 392 Pa. 248, 140 A. 2d 591 (1958). However, it may be reasonably inferred from paragraphs 11 and 12 of the amended complaint (which relate the dishonoring for reason of insufficient funds, of two checks in the name of Bar-Jay and signed by defendant Ruth) that said corporation was insolvent. Insolvency, as defined by the Business Corporation Law, Act of May 5, 1933, P. L. 364, 15 PS §1002(9) is the "inability of a corporation to pay its debts as they become due in the usual course of business." Such inability occurred when the bank dishonored the defendant corporation's checks.

In paragraph 24(b) of counts 5 and 7, plaintiff charges defendant Ruth as having made "an unlawful dividend, unlawful withdrawal or unlawful distribution of assets of Bar-Jay." As the Business Corporation Law, 15 PS §1707(A), and the official comment to that section indicate, it was the intention of the legislature to place the remedy for the unlawful withdrawal or distribution of corporate assets solely in the corporation and to remove the same from the general creditors. However, since plaintiff has alleged a good cause of action under one theory, it is immaterial whether it has a good cause of action under an alternate theory: Swift v. Nationwide Mutual Insurance Co., 31 D. & C. 2d 448 (Mercer Co., 1963). In Miller v. Dreher, 25 Monroe 53 (1967), where the complaint set forth two separate and distinct alternative claims, but they were not separated in separate counts, the court declined to consider a demurrer to one of the claims since the alternate claim was validly pleaded.

It is our conclusion that the demurrer to counts 5 and 7 must be overruled.

### ORDER

And now, July 16, 1974, defendant Ruth's demurrers to counts 2 and 3 of the complaint are sustained and said claims are dismissed. The demurrers to counts 4, 5 and 7 are overruled and defendant Ruth is directed to file an answer to said counts within 20 days.